T.C. Memo. 1998-203


UNITED STATES TAX COURT


RAMON A. GARCIA AND BERTHA E. GARCIA, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 21532-95.                Filed June 3, 1998.


<u>Richard M. Taylor</u> and <u>James E. McCutcheon III</u>, for
petitioners.

<u>Elizabeth A. Owen</u>, for respondent.


MEMORANDUM FINDINGS OF FACT AND OPINION

WHALEN, <u>Judge</u>:  Respondent determined the following
deficiencies in, and accuracy-related penalties with
respect to, petitioners' Federal income tax:

| Year | Deficiency | Sec. 6662 Penalty |
|------|-----------|-------------------|
| 1990 | $22,763 | $4,553 |
| 1991 | 25,581 | 5,116 |

Unless stated otherwise, all section references are to the Internal Revenue Code as in effect during the years in issue.

The issues remaining for decision are: (1) Whether loans that petitioner received from a qualified employer plan during 1986, together with accrued interest, are properly treated under section 72(p) as distributions from the plan in 1991, as respondent contends, or in a prior year that is not before the Court, as petitioners contend; (2) in the case of loans from a qualified employer plan that are treated as distributions under section 72(p), whether subsequent accruals of interest are properly treated as additional distributions from the plan; and (3) whether petitioners are liable for the accuracy-related penalty for negligence prescribed by section 6662.

FINDINGS OF FACT

Some of the facts have been stipulated and are so found. The stipulation of facts, supplemental stipulation of facts, and exhibits attached to each are incorporated herein by this reference. Petitioners are husband and wife

who filed joint Federal income tax returns for 1990 and 1991. At the time they filed their petition in this case petitioners resided in Del Rio, Texas. All references to petitioner are to Mr. Ramon A. Garcia.

Petitioner is a physician who engages in the practice of medicine with approximately five employees in Del Rio, Texas. In 1976, petitioner established The Ramon A. Garcia, M.D., P.A., Profit Sharing Plan & Trust Agreement (the plan) in connection with his medical practice. The plan was at all relevant times a qualified employer plan within the meaning of section 72(p)(4). Petitioner was a participant in the plan at all times since its inception. He also served as plan administrator and as one of three trustees of the trust that formed part of the plan.

Petitioner received 13 separate loans from the plan between February 1986 and June 1992. The dates and amounts of these loans are as follows:

| Date | Amount |
|------|--------|
| 2/03/86 | $15,000.00 |
| 5/01/86 | 12,000.00 |
| 8/15/86 | 11,760.00 |
| 1/15/87 | 10,000.00 |
| 2/15/87 | 4,000.00 |
| 2/15/88 | 10,000.00 |
| 8/15/88 | 5,000.00 |
| 1/31/90 | 6,000.00 |
| 4/16/90 | 18,000.00 |
| 1/01/91 | 1,675.86 |

| Date | Amount |
|------|--------|
| 5/22/91 | 2,151.47 |
| 3/24/92 | 2,500.00 |
| 6/17/92 | 5,000.00 |

Each loan is evidenced by a written note, and the terms of the notes are set forth on substantially identical forms. Each note requires repayment over a 5-year period "in 20 quarterly installments", together with interest at the rate of 10 percent per annum.

Petitioner did not make payments in accordance with the terms of the notes. He made only two payments. On April 11, 1989, he made a partial payment of $8,545, and sometime in 1994, he paid the entire outstanding balance of all of the loans, including all accrued interest. There is no written agreement or other document evidencing a renegotiation, extension, renewal, or revision of any part of the plan or any of the loans. Petitioners did not include any of the loans in the gross income reported on their Federal income tax returns.

Prior to trial, respondent made concessions which resulted in reduced deficiencies and penalties. The amounts now in dispute are as follows:

|   | Revised |   |
|---|---|---|
| Year | Deficiency | Sec. 6662 Penalty |
| 1990 | $9,603 | $1,921 |
| 1991 | 22,648 | 4,530 |

Respondent computed the amount of the revised deficiency for 1990 by treating the principal amount of each of the loans that petitioner received in 1990 as a taxable distribution of plan assets in that year (viz $24,000, as shown in the following schedule). In addition, respondent treated the aggregate unpaid interest that accrued during 1990 on all of the outstanding loans, except the 1986 loans, as a distribution during 1990 (viz $5,100.82, as shown in the following schedule). This amount includes interest that accrued during 1990 on the loans made in 1987 and 1988 that the parties agree are deemed distributions prior to 1990. Respondent calculated the aggregate deemed distribution for 1990, $29,100.82, as follows:

| Date | Loan Principal | 1990 Loans | Balance as of 12/31/89 | Balance as of 12/31/90 | 1990 Accrued Interest | Total Distribution |
|---|---|---|---|---|---|---|
| 2/03/86 | $15,000.00 | | | | | |
| 5/01/86 | 12,000.00 | | | | | |
| 8/15/86 | 11,760.00 | | | | | |
| 1/15/87 | 10,000.00 | | $13,120.87 | $14,482.98 | $1,362.11 | |
| 2/15/87 | 4,000.00 | | 5,248.35 | 5,793.19 | 544.84 | |
| 2/15/88 | 10,000.00 | | 11,886.86 | 13,120.87 | 1,234.01 | |

| Date | Loan Principal | 1990 Loans | Balance as of 12/31/89 | Balance as of 12/31/90 | 1990 Accrued Interest | Total Distribution |
|------|------|------|------|------|------|------|
| 8/15/88 | 5,000.00 | | 5,657.04 | 244.31 | 587.27 | |
| 1/31/90 | 6,000.00 | $6,000.00 | | 6,461.34 | 461.34 | |
| 4/16/90 | 18,000.00 | 18,000.00 | | 18,911.25 | 911.25 | |
| 1/01/91 | 1,675.86 | | | | | |
| 5/22/91 | 2,151.47 | | | | | |
| 3/24/92 | 2,500.00 | | | | | |
| 6/17/92 | 5,000.00 | _____ | | | _____ | |
| | | 24,000.00 | | | 5,100.82 | $29,100.82 |

Respondent computed the amount of the revised deficiency for 1991 by treating the principal amount of each of the loans that petitioner received in 1991 as a distribution of plan assets in 1991 (viz $3,827, as shown in the following schedule). In addition, respondent treated the aggregate unpaid interest that accrued during 1991 on all of the loans, except the 1986 loans, as a distribution during 1991 (viz $6,986.75, as shown in the following schedule). As with 1990, this amount includes interest that accrued during 1991 on the loans made in 1987, 1988, and 1990 that the parties agree are deemed distributions prior to 1991. Finally, respondent treated the principal amounts of the three loans that petitioner received during 1986, together with accrued interest as of December 31, 1991, as a distribution in 1991 (viz $55,941.57, as shown in the following schedule).

Respondent calculated the aggregate deemed distribution

for 1991, $66,755.32, as follows:

| Date | Loan Principal | 1991 Loans | Balance as of 12/31/90 | Balance as of 12/31/91 | 1991 Accrued Interest | Balance as of 12/31/91 | Total Distribution |
|---|---|---|---|---|---|---|---|
| 2/03/86 | $15,000.00 | | | | | $26,469.16 | |
| 5/01/86 | 12,000.00 | | | | | 9,720.53 | |
| 8/15/86 | 11,760.00 | | | | | 19,751.88 | |
| 1/15/87 | 10,000.00 | | $14,482.98 | $15,986.50 | $1,503.52 | | |
| 2/15/87 | 4,000.00 | | 5,793.19 | 6,394.60 | 601.41 | | |
| 2/15/88 | 10,000.00 | | 13,120.87 | 14,482.98 | 1,362.11 | | |
| 8/15/88 | 5,000.00 | | 6,244.31 | 6,892.56 | 648.25 | | |
| 1/31/90 | 6,000.00 | | 6,461.34 | 7,132.11 | 670.77 | | |
| 4/16/90 | 18,000.00 | | 18,911.25 | 20,874.18 | 1,962.93 | | |
| 1/01/91 | 1,675.86 | [1]$1,676.00 | | 1,804.87 | 128.87 | | |
| 5/22/91 | 2,151.47 | [1]2,151.00 | | 2,259.89 | 108.89 | | |
| 3/24/92 | 2,500.00 | | | | | | |
| 6/17/92 | 5,000.00 | _____ | | | _____ | _____ | |
| | | 3,827.00 | | | 6,986.75 | 55,941.57 | $66,755.32 |

[1]The difference between the principal amounts of the loans petitioner received in 1991 and the amounts respondent includes in the deemed distribution for the year is presumably attributable to rounding.

We note that in calculating the unpaid balance of the

1986 loans as of December 31, 1991, respondent applied the

$8,545 payment that petitioner made on April 11, 1989, to

the outstanding balance of the May 1, 1986, loan as of the

date of the payment.  We also note that, in computing the

revised deficiency, respondent did not treat the principal

amounts of the loans petitioner received in 1987, 1988, or

1992 as taxable distributions in either of the years at

issue.

OPINION

Petitioners do not dispute respondent's treatment of the principal amounts of the 1990 and 1991 loans as deemed distributions in the respective years of receipt.  However, petitioners contend that the 1986 loans, together with accrued interest, should be treated as distributions in 1987 rather than 1991, as determined by respondent.  In addition, petitioners contend that respondent erred in treating the unpaid interest that accrued during 1990 and 1991 on all of the outstanding loans, except the 1986 loans, as taxable distributions in those respective years. Petitioners bear the burden of proving that respondent's determinations are erroneous.  See Rule 142(a).  All Rule references are to the Tax Court Rules of Practice and Procedure.

Section 402(a) provides that "the amount actually distributed to any distributee by any employees' trust described in section 401(a) * * * shall be taxable to [the distributee], in the year in which so distributed, under section 72 (relating to annuities)."  Section 72(p)(1)(A) provides generally that a loan from a qualified employer

plan to a plan participant or beneficiary is treated as a taxable distribution to the participant or beneficiary in the taxable year in which the loan is received.  See Patrick v. Commissioner, T.C. Memo. 1998-30; Prince v. Commissioner, T.C. Memo. 1997-324; Estate of Gray v. Commissioner, T.C. Memo. 1995-421; cf. Furlong v. Commissioner, 36 F.3d 25, 26 (7th Cir. 1994), affg. T.C. Memo. 1993-191.  Section 72(p)(2), however, provides an exception to this general rule.  Under this exception, a loan is not treated as a taxable distribution if:  (1) The principal amount of the loan (when added to the outstanding balance of all other loans from the same plan) does not exceed a specified limit; and (2) the terms of the loan impose certain minimum repayment requirements.  See sec. 72(p)(2).

Section 72(p) was added to the Code by the Tax Equity & Fiscal Responsibility Act of 1982 (the 1982 Act), Pub. L. 97-248, sec. 236, 96 Stat. 324, 509.  In its original form, section 72(p) provided in pertinent part as follows:

> (p)  Loans Treated as Distributions.--For purposes of this section--

(1) Treatment as Distributions.--

(A) Loans.--If during any taxable year a participant or beneficiary receives (directly or indirectly) any amount as a loan from a qualified employer plan, such amount shall be treated as having been received by such individual as a distribution under such plan.

\* \* \* \* \* \* \*

(2) Exception for Certain Loans.--

(A) General rule.--Paragraph (1) shall not apply to any loan to the extent that such loan (when added to the outstanding balance of all other loans from such plan whether made on, before, or after August 13, 1982), does not exceed the lesser of—

(i) $50,000, or

(ii) ½ of the present value of the nonforfeitable accrued benefit of the employee under the plan (but not less than $10,000).

(B) Requirement that the loan be repayable within 5 years.--

(i) In general.--Subparagraph (A) shall not apply to any loan unless such loan, by its terms, is required to be repaid within 5 years.

(ii) Exception for home loans.-- Clause (i) shall not apply to any loan used to acquire, construct, reconstruct, or substantially rehabilitate any dwelling unit which within a reasonable time is to be used (determined at the time the loan is

>made) as the principal residence of the participant or a member of the family * * *.

This provision applied to all loans made after August 13, 1982.  See 1982 Act, sec. 236(c)(1), 96 Stat. 324, 510.

As part of the Tax Reform Act of 1986 (the 1986 Act), Pub. L. 99-514, sec. 1134(b), 100 Stat. 2085, 2484, Congress amended section 72(p) by, inter alia, adding a new subparagraph (2)(C), which imposes an additional requirement for the exception contained in section 72(p)(2).  That provision states as follows:

>(C) Requirement of level amortization.--Except as provided in regulations, this paragraph shall not apply to any loan unless substantially level amortization of such loan (with payments not less frequently than quarterly) is required over the term of the loan.

Under this level amortization requirement, a loan is not eligible for the exception contained in section 72(p)(2) unless it requires substantially level amortization over the term of the loan, with payments no less frequently than quarterly.  See id.  This level amortization requirement applies only to loans that are made, renewed, renegotiated,

modified, or extended after December 31, 1986.  See 1986

Act, sec. 1134(e), 100 Stat. 2085, 2484.

Treatment of 1986 Loans

The principal issue in this case involves the treat-

ment of the 1986 loans.  As discussed more fully below,

this issue turns on whether the 1986 loans were modified

or extended after 1986 such that they are subject to a

proposed regulation interpreting the level amortization

requirement of the 1986 Act.

The parties agree that at the time the 1986 loans were

made, they were not subject to treatment as distributions

under section 72(p)(1) because they qualified under the

exception set forth in section 72(p)(2).  The 1986 loans

became subject to treatment as distributions later by

reason of petitioner's failure to make the payments

required by the notes.  The parties differ on the time

the 1986 loans should be treated as distributions.

In formulating the revised deficiency, respondent

treated the 1986 loans as subject to the 1982 Act and

included the outstanding balance of the 1986 loans as of

December 31, 1991, as a taxable distribution of plan assets

to petitioners in 1991.  Respondent's position is based on

the conference report accompanying the 1982 Act, which

states in pertinent part as follows:

> if payments under a loan with a repayment period
> of less than 5 years are not in fact made, so
> that an amount remains payable at the end of 5
> years, the amount remaining payable is treated as
> if distributed at the end of the 5-year period.
> * * *  [H. Conf. Rept. 97-760, at 619 (1982),
> 1982-2 C.B. 600, 672.]

The above-quoted statement from the conference report sets

forth Congressional intent regarding the treatment of loans

that are subject to the 1982 Act, that is, loans made after

August 13, 1982.  See H. Conf. Rept. 97-760, at 620 (1982),

1982-2 C.B. 600, 672.  Based upon the conference report,

respondent treated the unpaid balance of the 1986 loans

as a taxable distribution in 1991, the end of the 5-year

period following the dates of the loans.

Petitioners concede that the 1986 loans must be

treated as taxable distributions, but argue that "the

entire balance of each loan became taxable to Petitioners

in taxable year 1987, at the latest."  Petitioners reason

that the level amortization requirement contained in

section 72(p)(2)(C) that was added to the Code by the 1986 Act applies to the 1986 loans because the loans were modified after December 31, 1986. See 1986 Act, sec. 1134(e), 100 Stat. 2085, 2484. Petitioners further reason that because the level amortization requirement applies to the 1986 loans, the interpretation of section 72(p)(2)(C) contained in a proposed regulation issued under the 1986 Act also applies to the loans. This proposed regulation provides as follows:

Q-10. If a participant fails to make installment payments required under the terms of a loan that satisfied the requirements of [section 72(p)(2)] when made, when does a deemed distribution occur and what is the amount of the deemed distribution?

A-10. (a) Timing of deemed distribution. Failure to make any installment payment when due in accordance with the terms of the loan violates [the level amortization requirement of] section 72(p)(2)(C) and, accordingly, results in a deemed distribution at the time of such failure * * * .

(b) Amount of deemed distribution. If a loan satisfied [the requirements of section 72(p)(2)] when made, but there is a failure to pay the installment payments required under the terms of the loan * * *, then the amount of the deemed distribution equals the entire outstanding balance of the loan at the time of such failure. [Sec. 1.72(p)-1, Q&A-10, Proposed Income Tax

Regs., 60 Fed. Reg. 66234, 66236 (Dec. 21, 1995)
(emphasis added).]

Under this proposed regulation, petitioners contend,
the loans must be treated as distributions at the time
petitioner first failed to make a quarterly installment
payment.  They further contend that such failure occurred
in "1987, at the latest."

We note at the outset that the above proposed
regulation has not been finalized.  Moreover, even if the
proposed regulation were final, it would not, by its terms,
apply to the 1986 loans.  See sec. 1.72(p)-1, Q&A-19,
Proposed Income Tax Regs. 63 Fed. Reg. 42, 47 (Jan. 2,
1998) (regulation applies to "loans made on or after the
date that is three months after the date of publication of
the final regulations in the Federal Register.")  In any
event, as discussed below, we reject petitioners' threshold
contention that section 72(p)(2)(C) as added to the Code by
the 1986 Act is applicable to the 1986 loans.  Therefore,
we need not address petitioners' contention regarding the
effect of the proposed regulation.

In arguing that the 1986 loans were modified after December 31, 1986, petitioners stipulate that there is no written agreement or other document evidencing a renewal, renegotiation, modification, or extension of the loans. Petitioners maintain that the loans were modified by the "regular course of dealing" between petitioner and the plan. Specifically, petitioners argue that "Petitioner's longstanding failure to make required quarterly payments on the notes (and the plan's failure to enforce such payments) amounted to a revision or modification of the terms of the underlying obligations."

Petitioners cite Tech. Adv. Mem. 93-44-001 (November 5, 1993) (the TAM) to support their position that the plan's failure to demand payment constituted a modification of the terms of the notes. We have previously noted that a technical advice memorandum is merely a ruling given to a specific taxpayer based upon the taxpayer's specific facts and is not a ruling of general application. See Golden Belt Tel. Association, Inc. v. Commissioner, 108 T.C. 498, 506 (1997). It does not constitute authority and should not be cited as precedent. See sec. 6110(j)(3);

Golden Belt Tel. Association, Inc. v. Commissioner, supra;
Transco Exploration Co. v. Commissioner, 95 T.C. 373, 386
(1990), affd. 949 F.2d 837 (5th Cir. 1992); cf. Follender
v. Commissioner, 89 T.C. 943, 958 (1987).

Moreover, the TAM is clearly distinguishable from the
instant case.  The taxpayer in the TAM was a participant
in a qualified profit-sharing plan who received a loan on
December 18, 1986, from the trust that formed a part of the
plan.  The Commissioner treated the loan as a distribution
under section 72(p)(1) based upon a determination that the
terms of the note violated the level amortization
requirement of section 72(p)(2)(C).  The taxpayer argued
that the loan was not subject to the level amortization
requirement of the 1986 Act because it had been made prior
to December 31, 1986, the effective date of the 1986 Act.
Respondent rejected the taxpayer's argument and determined
that the 1986 Act was applicable because the loan had been
extended after the effective date.  Significantly, the
Commissioner did not rely on the fact that the trustee of
the trust had executed two signed statements after
December 31, 1986, purporting to extend the repayment

period under the terms of the note. Rather, the Commissioner found that all parties to the loan knew that the trustee intended to exercise his unilateral authority to extend it. In concluding that the loan was modified after December 31, 1986, the Commissioner stated:

> [The taxpayer] acknowledges that the delay in payment was discussed with the [other participants in the plan] and the [other participants] knew that no attempt would be made to demand payment. Therefore, it appears that the provision in the original loan giving the trustee unilateral authority to extend the loan was acted on, and the document [containing the written extensions] indicates the trustee did extend the loan. Even if the extension agreement was prepared after the fact, it appears in this closely held company that all parties involved knew that the trustee was extending the loan. Accordingly, the loan is to be treated as a new loan on the date of extension, and is therefore subject to the level amortization requirement. [Tech. Adv. Mem. 93-44-001 (November 5, 1993).]

In contrast, there is no evidence in this case that the parties to the loan transactions intended or agreed to modify or change the terms of the loans after December 31, 1986, and thus there is no basis to find that the 1986 Act amendments are applicable. First, petitioners stipulate that there is no written document or notation evidencing a

renewal, renegotiation, modification, or extension of the 1986 loans. Second, there is no other evidence that the parties to the loan intended to modify their contractual relationship in any manner. In fact, we are unable to find from petitioner's vague and evasive testimony that he was even aware of the quarterly repayment requirements in the notes. Petitioner testified on direct examination as follows:

Q  Dr. Garcia, the stipulated notes call for quarterly repayments. In fact, were those quarterly repayments ever made?

A  No.

Q  What was your understanding with regard to the repayment of the notes?

A  Well, according to the advice given to me by my CPA was that payment would be set up and that was the advice that I got. To me that plan was never the note.

Q  Did your CPA, Mr. Glen, ever tell you when the notes should be repaid?

A  No, sir.

        *   *   *   *   *   *   *

Q  * * * What was your understanding with regard to those quarterly payments?

A        I didn't have any knowledge or
         understanding of that.  I was just relying
         on the advice of my CPA.

Petitioner testified on cross-examination as follows:

Q        Did the notes state that you had to pay
         -- that you had to make payments quarterly?

A        I don't recollect.

We also note that neither of the other trustees testified
at trial.  Unlike the TAM, in this case we have no basis
to find that the parties to the loans, consisting of
petitioner and the other two trustees, on the one hand,
and petitioner as borrower, on the other hand, intended to
renew, renegotiate, modify, or extend the terms of the
loans after 1986.

Petitioners also cite three State court cases for the
proposition that the plan's "failure to enforce its rights
over a three or four year period" constituted a "revision
or modification of the [notes]" under State law.  In
effect, petitioners argue that State law controls our
determination of whether the subject loans were renewed,
renegotiated, modified, or extended after the effective

date of the 1986 Act.  Petitioners cite no authority for that proposition.  Nevertheless, we find it unnecessary to decide whether State law controls under these circumstances because each of the cases petitioners cite is distinguishable.

Each of the State cases involves overt conduct between two distinct parties to a contract clearly evidencing mutual intent to change or alter the terms of the contract. See <u>Goodyear Tire & Rubber Co. v. Portilla</u>, 879 S.W.2d 47 (Tex. 1994) (employer's failure to enforce antinepotism policy for approximately 17 years); <u>Highpoint of Montgomery Corp. v. Vail</u>, 638 S.W.2d 624 (Tex. App. 1982) (lender's regular acceptance of late payments on a note for approximately 11 years); <u>Wendlandt v. Sommers Drug Stores Co.</u>, 551 S.W.2d 488 (Tex. Civ. App. 1977) (landlord's failure to object to late payments over a period of 1½ to 2 years).  In contrast, the parties to the notes in this case did not engage in any conduct evidencing an intent to renew, renegotiate, modify, or extend the terms of the notes.  As noted above, we are unable to find that petitioner was even aware of the provisions in the notes

requiring quarterly payments, and neither of the other trustees testified at trial.

Moreover, unlike the Texas cases, each of which involves distinct contractual parties with competing interests, in this case, petitioner acted as both administrator of the plan, trustee of the plan trust, and participant-borrower. Petitioner's unilateral failure to demand payment from himself under the circumstances presented in this case is not sufficient, by itself, to evidence mutual assent between two parties to modify the terms of the notes.

Furthermore, petitioners do not attempt to show at exactly what point the plan's failure to demand payment constituted a modification of the loans. Based on the cases petitioners cite, any modification that might have occurred presumably would have taken place after sufficient time passed to create a "regular course of dealing." Even if we accept petitioners' argument that the notes were modified by a regular course of dealing, petitioners have not shown any factual basis on which to find that the

regular course of dealing was established prior to the years before the Court.

Based on the foregoing, we find that petitioners have failed to prove that the 1986 loans were renewed, renegotiated, modified, or extended after 1986 within the meaning of the 1986 Act effective date provisions. We therefore hold that the level amortization requirement contained in 1986 Act is not applicable to such loans. Cf. Hickman v. Commissioner, T.C. Memo. 1997-545. Hence, the interpretation of that provision contained in the proposed regulation, discussed above, on which petitioners rely, is not applicable to the 1986 loans. Accordingly, we sustain respondent's determination that the outstanding balance of the 1986 loans as of December 31, 1991, constitutes a distribution of plan assets to petitioners in 1991.

Unpaid Interest Accrued During 1990 and 1991

Respondent treats the unpaid interest that accrued during 1990 and 1991 on all of the loans, other than the 1986 loans, as distributions of plan assets in those respective years. These amounts consist, either entirely or in substantial part, of interest that accrued after the

loans were deemed to be distributions for purposes of section 72(p). Respondent maintains that such amounts are, in effect, additional loans from the plan which must be treated as distributions pursuant to section 72(p)(1)(A).

We faced a similar question in Chapman v. Commissioner, T.C. Memo. 1997-147. The taxpayers in that case received loans from a qualified employer plan which respondent treated as deemed distributions pursuant to section 72(p) under the 1982 Act and the conference report cited above. Respondent also treated the interest that accrued during the 5-year repayment period, as well as the interest that accrued thereafter, as additional distributions under section 72(p).

In holding that none of the interest was properly treated as a taxable distribution, we stated:

> We are not convinced * * * that Congress intended that interest accruing during or after the 5-year period be treated as a taxable distribution for purposes of section 72(p)(1). Respondent's argument relies upon the fiction that the accrued interest constitutes an additional loan. From the language of section 72(p)(1), it is apparent that, to be a taxable distribution, the loan amount must be received either directly or indirectly by the participant or beneficiary. The accrued interest does not

satisfy the requirement that the loan must be received to be a distribution.  Accordingly, we find that for the purposes of section 72(p)(1) neither * * * [of the taxpayers] received distributions in 1988 or 1989 equal to the interest * * * which accrued on the plan loans. [Chapman v. Commissioner, supra.]

Furthermore, we note that in proposed regulations recently issued under section 72(p), the Department of Treasury takes the position, contrary to respondent's position in this case, that interest which accrues after a loan is deemed distributed under section 72(p) is not treated as an additional deemed distribution.  Section 1.72(p)-1, Q&A-19, Proposed Income Tax Regs., 63 Fed. Reg. 42, 44 (Jan. 2, 1998), states in part as follows:

[A-19] deemed distribution of a loan is treated as a distribution for purposes of section 72. Therefore, a loan that is deemed to be distributed under section 72(p) ceases to be an outstanding loan for purposes of section 72, and the interest that accrues thereafter under the plan on the amount deemed distributed is disregarded in applying section 72 to the participant or beneficiary.  Even though interest continues to accrue on the outstanding loan * * *, this additional interest is not treated as an additional loan (and, thus, does not result in an additional deemed distribution) for purposes of section 72(p).  * * *

The proposed regulation recognizes that a loan may continue to be an enforceable obligation and continue to accrue interest after it is treated as a distribution under section 72(p). Nevertheless, under the proposed regulation, once the loan is treated as a distribution, it ceases to have the characteristics of a loan for section 72(p) purposes. Thus, unpaid interest that accrues after the date the loan is treated as a distribution is not treated as an additional distribution to the borrower.

We note that a proposed regulation carries no more weight than a position advanced by the Commissioner on brief. See Hospital Corp. of Am. v. Commissioner, 109 T.C. 21, 53 n.40 (1997); KTA-Tator, Inc. v. Commissioner, 108 T.C. 100, 102-103 (1997); Frazee v. Commissioner, 98 T.C. 554, 582 (1992); Zinniel v. Commissioner, 89 T.C. 357, 369 (1987); F.W. Woolworth Co. v. Commissioner, 54 T.C. 1233, 1265-1266 (1970). Nonetheless, we find that respondent's position in the proposed regulation makes more sense than the respondent's litigating position in this case. Respondent's litigating position is logically inconsistent to the extent that it continues to treat the loan as

outstanding for purposes of section 72(p) despite the fact that the principal amount of the loan previously has been deemed distributed and included in the taxpayer's income under section 72(p). Furthermore, respondent cites no authority in support of the litigating position taken in this case, other than a general reference to section 72(p), nor has respondent sought to reconcile the Commissioner's position in this case with the contrary position taken in the proposed regulation. Accordingly, we hold that respondent erred in treating the unpaid interest that accrued during 1990 and 1991 on all of the loans, except for the 1986 loans, as additional distributions. See Chapman v. Commissioner, supra.

Petitioners do not challenge respondent's treatment of the interest that accrued on the 1986 loans prior to the time the principal amounts were treated as distributions under section 72(p). Accordingly, we do not address whether respondent correctly included such amounts in the deemed distribution for 1991.

Accuracy-Related Penalty

Respondent determined that petitioners are liable for the accuracy-related penalty for negligence prescribed by section 6662. Petitioners contend that they should not be liable for the penalty because they acted in reasonable and good faith reliance on the advice of their accountant, Mr. Robert Glen, in preparing their 1990 and 1991 tax returns. They maintain that Mr. Glen was fully aware of all of the facts and circumstances relating to the formation and execution of the plan, as well as petitioner's loans from the plan, and that Mr. Glen failed to advise them to report the amounts received as taxable distributions. Petitioners also maintain that petitioner has no training or special knowledge regarding Federal tax law and qualified plan benefits, and that he did not understand "the application of federal tax laws to the loans he received from the qualified plan."

Section 6662 imposes a penalty equal to 20 percent of any portion of an underpayment of tax that is attributable to negligence or disregard of rules or regulations.  See sec. 6662(a) and (b).  The term "negligence" is defined as "any failure to make a reasonable attempt to comply with the provisions of [the Internal Revenue Code]".  Sec. 6662(c).  This includes any failure to exercise due care or to do what a reasonable and ordinarily prudent person would do under the circumstances.  See Rybak v. Commissioner, 91 T.C. 524, 565 (1988); Neely v. Commissioner, 85 T.C. 934, 947 (1985).  The term "disregard" includes any careless, reckless, or intentional disregard.  Sec. 6662(c). Petitioners bear the burden of proving that respondent's determination of negligence is erroneous.  See Rule 142(a); Luman v. Commissioner, 79 T.C. 846, 860-861 (1982).

Under certain circumstances, a taxpayer may avoid the accuracy-related penalty for negligence by showing that he or she acted in reasonable and good faith reliance on the advice of a competent, independent tax professional.  See

sec. 6664(c); Freytag v. Commissioner, 89 T.C. 849, 888 (1987), affd. 904 F.2d 1011 (5th Cir. 1990), affd. 501 U.S. 868 (1991); sec. 1.6664-4(b)(1), Income Tax Regs. Such reliance is not an absolute defense to negligence but merely a factor to be considered. See Freytag v. Commissioner, supra. When a taxpayer claims reliance on an accountant, the taxpayer must establish that correct information was provided to the accountant and that the item was incorrectly claimed as a result of the accountant's error. See id.; Ma-Tran Corp. v. Commissioner, 70 T.C. 158, 173 (1978); Pessin v. Commissioner, 59 T.C. 473, 489 (1972). Petitioners bear the burden of proving that their reliance on professional advice was reasonable. See Rule 142(a); Freytag v. Commissioner, supra.

In this case, the record shows that petitioners' returns for 1990 and 1991 were prepared by the accounting firm of Glen & Graf. However, neither Mr. Glen nor any member of Glen & Graf testified at trial. Petitioners

could have called Mr. Glen as a witness at trial but chose not to do so.  This creates a presumption that his testimony would have been unfavorable to petitioners, or at least suggests that the testimony would not have supported their position.  See <u>Wichita Terminal Elevator Co. v. Commissioner</u>, 6 T.C. 1158, 1165 (1946), affd. 162 F.2d 513 (10th Cir. 1947); see also <u>Simon v. Commissioner</u>, 830 F.2d 499, 506 (3d Cir. 1987), affg. T.C. Memo. 1986-156; <u>Schauer v. Commissioner</u>, T.C. Memo. 1987-237; <u>Song v. Commissioner</u>, T.C. Memo. 1995-446.

Based upon the record of this case, we do not know whether Mr. Glen or some other member of his firm prepared and signed the subject returns.  Petitioner testified that he did not recollect who signed the returns.  We also do not know whether Mr. Glen or other members of the firm had experience or expertise regarding qualified plans, such that petitioners' alleged reliance on their advice was reasonable.  Furthermore, there has been no showing of the specific information that petitioners provided to

Glen & Graf or the nature or extent of any advice that Mr. Glen may have provided to petitioners with respect to the returns.

Petitioner testified in general terms that he relied upon the advice of his accountant to establish and administer the qualified plan, and that he relied upon his accountant's advice with respect to his personal income tax returns for 1990 and 1991, and with respect to the preparation of annual reports on behalf of the plan. However, petitioner's testimony regarding the advice he received from Mr. Glen about the subject loans was vague and contradictory. On the one hand, he testified on direct examination that Mr. Glen advised him not to make any payments on the loans:

> Q        Now, Dr. Garcia, did you make any
>          payments -- your -- did you make any
>          payments on the loans which have been
>          entered into evidence other than the
>          payments -- the partial payment that was
>          made in 1988, I believe, and which is shown
>          in the stipulation, and then the payment on

April 15, 1994 which again is part of the stipulation?

A        No.

Q        An was that all done pursuant to advice of this competent CPA?

A        That's correct.

Q        And who was that CPA, Doctor?

A        Robert Glen.

                *   *   *   *   *   *   *

Q        Dr. Garcia, the stipulated notes call for quarterly repayments.  In fact, were those quarterly payments ever made?

A        No.

Q        What was your understanding with regard to the repayment of the notes?

A        Well, according to the advice given to me by my CPA was that payment would be set up and that was the advice that I got.  To me that plan never was the note.

Q        Did your CPA, Mr. Glen, ever tell you when the notes should be repaid?

A        No, sir.

Q        Was it your understanding that he would
         tell you when the notes should be repaid
         under the tax law?

A        Well, I was counting on his advice.

Q        * * * What was your understanding with
         regard to those quarterly payments?

A        I didn't have any knowledge or
         understanding of that.  I was just relying
         on the advice of my CPA.

Q        And, in fact, was that the course of
         action you followed throughout 1987, '87,
         [sic] '88, '89 and until the present?

A        That's correct.


On cross-examination, petitioner admits that he never

received any specific advice regarding the taxability of

the loans.  Petitioner testified as follows:


Q        Mr. Garcia, I -- we would just like to know
         what your position was, whether you felt that you
         were supposed to pay tax on distributions from
         those loans you took in 1986 when you signed your
         return.

A        I really don't know because, again, I was
         just counting on the advice of my CPA.

Q        And the advice of your CPA was you did not have to pay tax?

A        No.

Q        No, it was or --

A        I didn't get any advice in regard to tax, paying any tax.

Q        Your accountant told you, You do not have to pay tax on any of these loans that you received?

A        No. He did not say that. The only thing that he said was that we need to devise a plan to pay off these loans.

Q        Did he advise you that you didn't have to pay off those loans?

A        No.

Thus, while the record contains petitioner's self-serving testimony that he and Mrs. Garcia relied upon the advice of Mr. Glen, we find petitioner's testimony to be vague, conclusory, and contradictory. Indeed, petitioner's testimony on cross-examination is that he "did not get any advice [from his accountant] in regard to tax, paying any tax." Accordingly, this is not a case in which we are

questioning the reasonableness of petitioners' reliance on the advice of a tax professional. Cf. <u>Streber v. Commissioner</u>, 138 F.3d 216 (5th Cir. 1998), revg. T.C. Memo. 1995-601; <u>Reser v. Commissioner</u>, 112 F.3d 1258 (5th Cir. 1997), affg. in part and revg. in part and remanding T.C. Memo. 1995-572; <u>Chamberlain v. Commissioner</u>, 66 F.3d 729 (5th Cir. 1995), affg. in part revg. in part T.C. Memo. 1994-228; <u>Heasley v. Commissioner</u>, 902 F.2d 380 (5th Cir. 1990), revg. T.C. Memo. 1988-408. Rather, there is no credible evidence in this case that petitioners' accountant provided them with <u>any</u> advice regarding the proper tax treatment of the loans petitioner received from the plan. Under these circumstances, we are unable to find that petitioners acted in good faith and reasonable reliance on the advice of a tax professional such that they should be relieved of the accuracy-related penalty for negligence. Cf. <u>Pappas v. Commissioner</u>, 78 T.C. 1078, 1092 (1982); <u>Sweatman v. Commissioner</u>, T.C. Memo. 1997-468; <u>Drummond v. Commissioner</u>, T.C. Memo. 1997-71; <u>Balkissoon v.</u>

<u>Commissioner</u>, T.C. Memo. 1992-223; <u>Banks v. Commissioner</u>, T.C. Memo. 1991-641.  Accordingly, we sustain respondent's imposition of the accuracy-related penalty for negligence.

In light of the foregoing, and to reflect concessions and settled issues,

<u>Decision will be entered</u>

<u>under Rule 155</u>.