T.C. Memo. 2004-258

UNITED STATES TAX COURT

ISABEL MOLINA AND ISAAC MOLINA, JR., Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 4026-03L.                    Filed November 10, 2004.

Isabel Molina & Isaac Molina, Jr., pro sese.

<u>Abbey B. Garber</u>, <u>Alvin A. Ohm</u>, and <u>Kathryn Patterson</u>, for
respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

VASQUEZ, <u>Judge</u>:  Pursuant to section 6330(d),[1] petitioners
seek review of respondent's determination to proceed with
collection of their 2000 tax liability.

_____

[1]  Unless otherwise indicated, all section references are to
the Internal Revenue Code, and all Rule references are to the Tax
Court Rules of Practice and Procedure.

FINDINGS OF FACT

Some of the facts have been stipulated and are so found. The stipulation of facts and the attached exhibits are incorporated herein by this reference. At the time they filed the petition, Isabel and Isaac Molina, Jr., resided in Dallas, Texas.

In 1998, Mr. Molina borrowed $20,000[2] (1998 loan) from his section 401(k) retirement savings plan (retirement plan) with the City of Dallas (the city). Shortly after he received the 1998 loan, Mr. Molina began making a series of equal monthly payments (as part of a repayment schedule) on the 1998 loan.

In March 1999, the city terminated Mr. Molina's employment. At the time of his termination, the balance on the 1998 loan was $19,619.74 and the remaining term was 2.33 years. Mr. and Mrs. Molina made no further monthly payments on the 1998 loan after Mr. Molina's termination because the city did not have a system for them to make monthly payments on the 1998 loan after Mr. Molina's employment was terminated. Additionally, after his termination the city offset the 1998 loan with funds from the retirement plan.

---

[2] At trial and on brief, the parties consistently referred to the amount Mr. Molina borrowed in 1998 as being $20,000. Documents from the retirement plan for the period ending Dec. 31, 1998, list the amount Mr. Molina borrowed as $20,800. This discrepancy, however, does not affect the outcome of this case. For convenience, we shall refer to the amount borrowed as being $20,000.

On Form 1099-R, Distributions From Pensions, Annuities, Retirement or Profit-Sharing Plans, IRAs, Insurance Contracts, etc., for 2000 the city reported $19,619.74 as a distribution to Mr. Molina.

In October 2001, Mr. and Mrs. Molina filed their 2000 joint Federal income tax return.  Among other things, on their 2000 return Mr. and Mrs. Molina reported (1) a $19,620 distribution from the retirement plan, (2) $1,962 of tax on an early distribution from a qualified pension plan, (3) a total income tax liability of $12,801, and (4) a balance due of $5,777 after subtracting their withholding.  They did not remit any payment with their 2000 return.  Mr. and Mrs. Molina reported the $19,620 distribution on their 2000 return because they believed they were obligated to report this amount after receiving the Form 1099-R.

On May 13, 2002, respondent received a Form 656, Offer in Compromise (OIC), from Mr. and Mrs. Molina.  Mr. and Mrs. Molina attached a letter dated May 10, 2002 (May 2002 letter), to their OIC.  The May 2002 letter explained that the city's reporting the $19,620 distribution as income in 2000 represented a "bureaucratic inconsistency" and there was doubt as to liability for their 2000 tax year.  Respondent did not process the OIC because Mr. and Mrs. Molina left blank the space listing the amount offered.

On October 4, 2002, respondent mailed Mr. and Mrs. Molina a letter asking them to fill in the blank for the amount offered. On October 16, 2002, respondent received the OIC from Mr. and Mrs. Molina listing $2,107.42 as the amount offered.

After receiving a Notice of Intent to Levy and Notice of Your Right to a Hearing, Mr. and Mrs. Molina timely submitted a request for a section 6330 hearing (hearing request). As part of their hearing request, Mr. and Mrs. Molina attached the May 2002 letter to the Form 12153, Request for a Collection Due Process Hearing. The May 2002 letter raised the issue of the underlying liability for 2000, noted the city made an error reporting the $19,620 distribution in 2000, and proposed an OIC as a collection alternative.

Sometime before February 14, 2003, Mr. and Mrs. Molina had a section 6330 hearing (hearing) with Appeals Officer Norman Becker. At the hearing, Mr. and Mrs. Molina raised the issue of whether they were liable for tax on the $19,620 distribution from the retirement plan. Appeals Officer Becker also considered Mr. and Mrs. Molina's eligibility for an OIC based on doubt as to liability and doubt as to collectibility.

On February 14, 2003, respondent issued Mr. and Mrs. Molina a Notice of Determination Concerning Collection Action(s) Under Section 6320 and/or 6330. Appeals Officer Becker determined that Mr. and Mrs. Molina properly reported the $19,620 distribution on

their 2000 return and that they had sufficient income and assets to pay their 2000 tax liability in full. Respondent rejected the OIC, concluding there was no doubt as to liability or collectibility.

In the petition, under the statement of disagreement, Mr. and Mrs. Molina referenced the May 2002 letter, which they attached to the petition.

OPINION

Pursuant to section 6330(c)(2)(A), a taxpayer may raise at the section 6330 hearing any relevant issue with regard to the Commissioner's collection activities, including spousal defenses, challenges to the appropriateness of the Commissioner's intended collection action, and alternative means of collection. Sego v. Commissioner, 114 T.C. 604, 609 (2000); Goza v. Commissioner, 114 T.C. 176, 180 (2000). If a taxpayer received a statutory notice of deficiency for the years in issue or otherwise had the opportunity to dispute the underlying tax liability, the taxpayer is precluded from challenging the existence or amount of the underlying tax liability. Sec. 6330(c)(2)(B); Sego v. Commissioner, supra at 610-611; Goza v. Commissioner, supra at 182-183.

Petitioners did not receive a statutory notice of deficiency for 2000. Respondent assessed petitioners' 2000 tax on the basis of the 2000 return. Petitioners raised the issue of their

underlying liability for 2000 in their hearing request, at the hearing, and in the petition. Accordingly, petitioners' underlying liability is properly before the Court, and we review that issue de novo. See Montgomery v. Commissioner, 122 T.C. 1 (2004); Sego v. Commissioner, supra; Goza v. Commissioner, supra. We shall review the remainder of respondent's determination for an abuse of discretion. See Sego v. Commissioner, supra.

Section 402(a) provides generally that distributions from a qualified plan are taxable to the distributee, in the taxable year of the distributee in which distribution occurs, pursuant to section 72. Section 72(p)(1)(A) provides the general rule that proceeds of a loan from a qualified employer plan to a plan participant are treated as a taxable distribution to the participant in the year in which the loan proceeds are received. See Patrick v. Commissioner, T.C. Memo. 1998-30, affd. 181 F.3d 103 (6th Cir. 1999). Section 72(p)(2), however, provides an exception to this general rule. Under this exception, a loan is not treated as a taxable distribution if: (1) The principal amount of the loan (when added to the outstanding balance of all other loans from the same plan) does not exceed a specified limit, sec. 72(p)(2)(A); (2) the loan, by its terms, must be repaid within 5 years from the date of its inception or is made to finance the acquisition of a home which is the principal residence of the participant, sec. 72(p)(2)(B); and (3) the loan

must have substantially level amortization with quarterly or more frequent payments required over the term of the loan, sec. 72(p)(2)(C).

Petitioners contend that the $19,620 distribution was not taxable in 2000.[3] Respondent argues that section 72(p) and the final regulation thereunder support the conclusion that Mr. Molina received the $19,620 distribution from the retirement plan in 2000.

Under the regulations, when a participant fails to make payments in accordance with the terms of a loan, the loan is treated as no longer meeting the section 72(p)(2)(C) requirement, thereby resulting in a deemed distribution. Sec. 1.72(p)-1, Q&A-4, Income Tax Regs. Such a deemed distribution occurs at the time the installment payment was due but not made and equals the entire outstanding balance of the loan at the time of such failure. Sec. 1.72(p)-1, Q&A-10, Income Tax Regs. The 1998 loan, however, was made before the effective date of this regulation. Sec. 1.72(p)-1, Q&A-22, Income Tax Regs.

---

[3] In his reply brief, respondent argues that petitioners raised this argument for the first time on brief. Respondent's argument is without merit. Petitioners raised this argument in the May 2002 letter which they attached to their OIC, the hearing request, and the petition. Furthermore, at the calendar call, a colloquy between petitioners and the Court made it clear that petitioners contended that 2000 was the incorrect year for taxing the $19,620 distribution from the retirement plan. Petitioners stated that they had asserted this "from the beginning".

Accordingly, the final regulation is not applicable to the case at bar.

Before the promulgation of the final regulation, a proposed regulation had been issued containing these same provisions. Sec. 1.72(p)-1, Q & A-4, Q & A-10, Proposed Income Tax Regs., 60 Fed. Reg. 66235, 66236 (Dec. 21, 1995). The proposed regulation, however, was to apply only to loans made after a certain period after the final regulation had been published. Sec. 1.72(p)-1, Q & A-19, Proposed Income Tax Regs., 60 Fed. Reg. 66237 (Dec. 21, 1995). Generally, proposed regulations are afforded no more weight than a position advanced by the Commissioner on brief. KTA-Tator, Inc. v. Commissioner, 108 T.C. 100, 102-103 (1997); F.W. Woolworth Co. v. Commissioner, 54 T.C. 1233, 1265-1266 (1970).

Nevertheless, we find that respondent's position in the proposed regulation makes more sense than respondent's litigating position that the distribution occurred in 2000. See Garcia v. Commissioner, T.C. Memo. 1998-203 (reaching this conclusion regarding another question and answer contained in the same proposed regulation), affd. without published opinion 190 F.3d 538 (5th Cir. 1999). Additionally, the substantially level amortization requirement under section 72(p)(2)(C) has been interpreted as requiring that payment of principal and interest be made in substantially level amounts over the term of the loan.

Plotkin v. Commissioner, T.C. Memo. 2001-71; Estate of Gray v. Commissioner, T.C. Memo. 1995-421.

Mr. Molina stopped making monthly payments on the 1998 loan in March 1999.  Additionally, the city no longer required monthly installment payments on the 1998 loan, and had no provision for Mr. Molina to continue making monthly installment payments on the 1998 loan, after Mr. Molina's termination.  Thus, after March 1999, the 1998 loan was no longer required to be repaid by means of level amortization.  See sec. 72(p)(2)(C).  Accordingly, pursuant to section 72(p), no distribution includable in Mr. Molina's gross income occurred in 2000.

It is unclear from the record, however, whether, after application of our holding that petitioners did not have to report the $19,620 deemed distribution in 2000, petitioners' tax liability for 2000 remains unpaid.  Accordingly, we will direct the parties to submit computations showing the correct amount of petitioners' tax liability for 2000.

To reflect the foregoing,

An appropriate order
will be issued.