108 T.C. No.8


UNITED STATES TAX COURT



KTA-TATOR, INC., Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 21013-95.              Filed March 11, 1997.

      P, a closely held corporation, advanced funds to
its shareholders.  The advances were used to pay
expenses relating to construction projects and were not
subject to written repayment terms.  After each project
was completed, amortization schedules were prepared and
the shareholders began repaying the advances.  Prior to
the shareholder's repayments, P did not report interest
income from the advances.  <u>Held</u>:  P, pursuant to sec.
7872, I.R.C., has interest income from below-market
demand loans it made to its shareholders.

Kenneth B. Tator (an officer), for petitioner.

<u>Michael A. Yost, Jr.</u>, for respondent.

OPINION

FOLEY, Judge:  By notice dated September 27, 1995, respondent determined deficiencies in petitioner's Federal income taxes as follows:

| Year | Deficiency |
|------|------------|
| 1992 | $10,443 |
| 1993 | 1,828 |

Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.  The issue for decision is whether petitioner, pursuant to section 7872, has interest income from loans it made to its shareholders.  We hold that it does.

## Background

The facts have been fully stipulated under Rule 122 and are so found.  At the time the petition was filed, petitioner's principal place of business was in Pittsburgh, Pennsylvania.

During the years in issue, petitioner provided various services within the coatings industry, including consulting, engineering, inspection, and lab analysis.  Kenneth B. Tator is the president of petitioner, and he and his wife (the Tators) are its sole shareholders.

In 1991, the Tators began two construction projects.  The first project involved the expansion of petitioner's Pittsburgh

headquarters, which the Tators owned and leased to petitioner. The second project involved the construction of a new office building in Houston, Texas, which the Tators would own and lease to petitioner. Petitioner was authorized by its board of directors to loan funds to the Tators for construction, the purchase of land, and other business purposes. During the construction phase of the two projects, petitioner made over 100 advances of funds to the Tators. Each advance was executed by issuing a separate corporate check, and the Tators used the advances to pay contractors and meet other expenses. The advances were not subject to written repayment terms. On the corporate balance sheets, petitioner reported the advances as loans to shareholders. Monthly and year-to-date totals were recorded in two accounts entitled "Mortgage Receivable - Pittsburgh" and "Mortgage Receivable - Houston".

The Houston project was completed in October of 1992, and the Pittsburgh project was completed in October of 1993. Upon the completion of each project, the Tators prepared an amortization schedule and began repaying the advances. The amortization schedule for each project delineated monthly payments over 20 years at an interest rate of 8 percent. The amortization schedule for the Houston project had a beginning principal balance of $400,218, while the amortization schedule for the Pittsburgh project had a beginning principal balance of $225,777.60.

On its 1992 and 1993 Federal income tax returns, petitioner did not report interest income from the advances. On September 27, 1995, respondent issued a notice of deficiency to petitioner. Respondent determined that petitioner, pursuant to section 7872, had unreported interest income of $30,718 for 1992 and $5,225 for 1993. Based on these amounts, respondent determined that petitioner was liable for deficiencies of $10,443 for 1992 and $1,828 for 1993.

## Discussion

Section 7872 was enacted as part of the Deficit Reduction Act of 1984 (DEFRA), Pub. L. 98-369, sec. 172(a), 98 Stat. 699. Section 7872 sets forth the income and gift tax treatment for certain categories of "below-market" loans (i.e., loans subject to a below-market interest rate). Section 7872 recharacterizes a below-market loan as an arms-length transaction in which the lender made a loan to the borrower in exchange for a note requiring the payment of interest at a statutory rate. As a result, the parties are treated as if the lender made a transfer of funds to the borrower, and the borrower used these funds to pay interest to the lender. The transfer to the borrower is treated as a gift, dividend, contribution of capital, payment of compensation, or other payment depending on the substance of the transaction. The interest payment is included in the lender's income and generally may be deducted by the borrower. See H. Conf. Rept. 98-861, at 1015 (1984), 1984-3 C.B. (Vol. 2), 1, 269;

Staff of Joint Comm. on Taxation, General Explanation of the Revenue Provisions of the Deficit Reduction Act of 1984, at 528-529 (J. Comm. Print 1984).

Section 7872 applies to a transaction that is: (1) A loan; (2) subject to a "below-market" interest rate; and (3) described in one of several enumerated categories. Sec. 7872(c)(1), (e)(1), (f)(8). The parties agree that the third requirement has been met. We discuss the remaining requirements in turn.

I. Loan Requirement

Respondent contends that each advance petitioner made to the Tators should be treated as a separate loan. Petitioner contends that the corporation was authorized to fund both projects with a single loan and that the advances were analogous to "draw downs" on an open line of credit. Petitioner further contends that, for purposes of section 7872, a loan did not exist until petitioner advanced all the funds necessary to complete the Pittsburgh and Houston projects. Petitioner relies on section 1.7872-2(a)(1), Proposed Income Tax Regs., 50 Fed. Reg. 33557 (Aug. 20, 1985), which states: "An integrated series of transactions which is the equivalent of a loan is treated as a loan."

While proposed regulations do constitute "'a body of informed judgment * * * which courts may draw on for guidance'", Frazee v. Commissioner, 98 T.C. 554, 582 (1992) (quoting Bolton v. Commissioner, 694 F.2d 556, 560 n.10 (9th Cir. 1982), affg. 77 T.C. 104 (1981)), we accord them no more weight than a litigation

position, F. W. Woolworth Co. v. Commissioner, 54 T.C. 1233, 1265-1266 (1970). Even if we were inclined to seek guidance from the proposed regulations, petitioner's reliance on section 1.7872-2(a)(1), Proposed Income Tax Regs., supra, is misplaced. That section is an antiabuse provision intended to address a series of transactions where each individual transaction may not be a loan, but collectively the series of transactions has the same effect as a loan. Contrary to petitioner's contention, section 1.7872-2(a)(3), Proposed Income Tax Regs., 50 Fed. Reg. 33557 (Aug. 20, 1985), rather than section 1.7872-2(a)(1), Proposed Income Tax Regs., supra, is the relevant section of the proposed regulations. Section 1.7872-2(a)(3), Proposed Income Tax Regs., supra, provides that "each extension or [sic] credit or transfer of money by a lender to a borrower is treated as a separate loan." Thus, the proposed regulations upon which petitioner relies provide that each advance should be treated as a separate loan. Indeed, petitioner reported, on its corporate balance sheets, each advance as a separate loan.

For authoritative guidance on whether a series of advances may be treated as individual loans, we turn to the legislative history of section 7872. The House conference report to DEFRA states that "any transfer of money that provides the transferor with a right to repayment may be a loan. For example, advances or deposits of all kinds may be treated as loans." H. Conf.

Rept. 98-861, supra at 1018, 1984-3 C.B. at 272 (emphasis added). Each of petitioner's advances was a transfer resulting in a right to repayment. In essence, each transfer was an extension of credit and therefore a loan. See Frazee v. Commissioner, supra at 589 (stating that "The term 'loan' under section 7872 is interpreted broadly to include any extension of credit.").

Accordingly, we conclude that the loan requirement is satisfied and that each advance is a separate loan for purposes of section 7872.

## II. Below-Market Loan Requirement

To determine if the below-market loan requirement is satisfied, we must ascertain whether the loan is (1) a demand or term loan and (2) subject to a below-market interest rate. See sec. 7872(e)(1).

### A. Demand or Term Loan

Below-market loans fit into one of two categories: Demand loans and term loans. Sec. 7872(e)(1); H. Conf. Rept. 98-861, supra at 1018, 1984-3 C.B. at 272. A demand loan includes "any loan which is payable in full at any time on the demand of the lender." Sec. 7872(f)(5). A term loan is "any loan which is not a demand loan." Sec. 7872(f)(6).

The determination of whether a loan is payable in full at any time on the demand of the lender is a factual one. Loans between closely held corporations and their controlling shareholders are to be examined with special scrutiny. Electric

& Neon, Inc. v. Commissioner, 56 T.C. 1324, 1339 (1971), affd. without published opinion 496 F.2d 876 (5th Cir. 1974). Petitioner made loans, without written repayment terms, to its only shareholders and had unfettered discretion to determine when the loans would be repaid. Therefore, the loans are demand loans.

We note that a technical correction in the Tax Reform Act of 1986 amended section 7872(f)(5) and expanded the definition of demand loan to include, "To the extent provided in regulations, * * * any loan with an indefinite maturity." Tax Reform Act of 1986, Pub. L. 99-514, sec. 1812(b)(3), 100 Stat. 2834. The legislative history accompanying the technical correction provides the following justification for the amendment:

> The definitions of term loan and demand loan in section 7872 appear to treat loans with an indefinite maturity as term loans. However, it often is impractical to treat a loan with an indefinite maturity as a term loan, since section 7872 requires the computation of the present value of the payments due under such a loan. Accordingly, the bill grants the Treasury Department authority to treat loans with indefinite maturities as demand loans rather than term loans. [S. Rept. 99-313, at 958 (1986), 1986-3 C.B. (Vol. 3) 1, 958; emphasis added.]

The Department of the Treasury, however, has not promulgated final regulations for section 7872, and the proposed regulations fail to address the treatment of loans that have indefinite maturities and are not payable on the demand of the lender. As a result, such loans are not demand loans and, pursuant to section 7872(f)(6), are term loans.

The technical correction is not applicable to petitioner's transactions. This amendment to the statute was intended to give the Department of the Treasury authority to <u>expand</u> the category of demand loans to include loans that have indefinite maturities and are not payable on the demand of the lender. We note that all demand loans by their very nature have indefinite maturities. See <u>Dickman v. Commissioner</u>, 465 U.S. 330, 337 (1984) (analyzing the "uncertain tenure of a demand loan"). If all loans with indefinite maturities were classified as term loans under the statute, no loan would meet the definition of a demand loan. "[W]e have employed the rule that statutes are to be construed so as to give effect to their plain and ordinary meaning unless to do so would produce absurd or futile results * * *. Furthermore, all parts of a statute must be read together, and each part should be given its full effect." <u>Phillips Petroleum Co. v. Commissioner</u>, 101 T.C. 78, 97 (1993), affd. without published opinion 70 F.3d 1282 (10th Cir. 1995). Petitioner's loans, payable on demand and having indefinite maturities, are demand, rather than term, loans. Next, we must determine whether petitioner's loans are subject to a below-market interest rate.

B. <u>Below-Market Interest Rate</u>

A demand loan is a below-market loan if it is interest free or if interest is provided at a rate that is lower than the applicable Federal rate (AFR) as determined under section

1274(d).  Sec. 7872(e)(1)(A).  If a demand loan is classified as a below-market loan, the lender has interest income (foregone interest) equal to the difference between (1) the interest that would have accrued on the loan using the AFR as the interest rate and (2) any actual interest payable on the loan.  Sec. 7872(e)(2).  The parties are treated as though, on the last day of each calendar year, the lender transferred an amount equal to the foregone interest to the borrower and the borrower repaid this amount as interest to the lender.  Sec. 7872(a).

During the construction phase of each project, petitioner made loans to the Tators.  Prior to the completion of construction and the preparation of the amortization schedules, the Tators did not pay interest on these loans.  Therefore, we conclude that the loans are below-market demand loans.

Petitioner contends that even if the requirements of section 7872 are met, a temporary regulation provides that section 7872 is not applicable, because the loans' interest arrangements have no significant effect on any Federal tax liability of the lender or the borrower.  See sec. 7872(h)(1)(C); sec. 1.7872-5T(b)(14), Temporary Income Tax Regs., 50 Fed. Reg. 33521 (Aug. 20, 1985).  To determine whether a loan lacks a significant tax effect, all facts and circumstances should be considered including the following factors:  (1) Whether the items of income and deduction generated by the loan offset each other; (2) the amount of such items; (3) the cost to the taxpayer of complying with the

provisions of section 7872 if such section were applied; and (4) any nontax reasons for deciding to structure the transaction as a below-market loan rather than a loan with interest at a rate equal to or greater than the applicable Federal rate and a payment by the lender to the borrower. Sec. 1.7872-5T(c)(3), Temporary Income Tax Regs., 50 Fed. Reg. 33521 (Aug. 20, 1985); see also H. Conf. Rept. 98-861, supra at 1020, 1984-3 C.B. at 274.

Petitioner contends that if section 7872 applies, the Tators would be entitled to claim an interest expense deduction equal to the interest they are deemed to have paid petitioner, and as a result, the items of income and deduction offset each other. Implicit in this contention is the assumption that the temporary regulation permits the borrower's reduction in tax from the interest deduction to offset the lender's increase in tax from the interest income. Petitioner has misinterpreted the scope of the exception. Because section 7872(h)(1)(C) and the temporary regulation refer to the tax liability of the "lender or the borrower", the factors must be applied separately to each taxpayer.

The following example illustrates this point. In the case of a below-market demand loan from a corporation to a shareholder, the corporation is treated as transferring to the shareholder, and the shareholder is treated as paying to the corporation, an amount equal to the foregone interest. The

deemed transfer from the corporation to the shareholder is treated as a distribution, which generally is taxed as a dividend to the shareholder.  Secs. 61(a)(7), 301(c)(1); H. Conf. Rept. 98-861, supra at 1013, 1984-3 C.B. at 267.  The shareholder generally may deduct the deemed interest payment to the corporation.  H. Conf. Rept. 98-861, supra at 1013, 1984-3 C.B. at 266.  The shareholder's income from the deemed dividend and the shareholder's deduction for the deemed payment of interest may offset each other within the meaning of the temporary regulation.  The corporation, on the other hand, is subject to tax on the foregone interest but is not entitled to a deduction for the deemed distribution it made to the shareholder. Therefore, it has no deduction to offset the interest income from the loan.  Similarly, petitioner has interest income but is not entitled to a deduction for the deemed distribution it made to the Tators.  As a result, petitioner's reliance on the exception is misplaced.

Accordingly, we hold that petitioner, pursuant to section 7872, has interest income from below-market loans it made to its shareholders.

To reflect the foregoing,

Decision will be entered for respondent.