113 T.C. No. 28


UNITED STATES TAX COURT


ROUNTREE COTTON CO., INC., Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 24014-97.                    Filed December 16, 1999.


        R determined that C made below-market-interest
loans directly and indirectly to C's shareholders
within the meaning of sec. 7872, I.R.C.  The "indirect"
loans were to entities owned in part by C's
shareholders.  C contends that sec. 7872, I.R.C., was
not intended to apply to a loan by C to a shareholder
of C who does not have a majority or controlling
interest in C.  C also contends that sec. 7872, I.R.C.,
does not apply to a loan by C to an entity in which no
shareholder of C individually holds a controlling or
majority interest.  R contends that the below-market-
interest loans to entities were all made indirectly to
C's shareholders.  All of C's shareholders were members
of the same family, and each of the entities was owned
entirely by members of that family, although some of
them were not shareholders of C.  R argues that sec.
7872, I.R.C., does not require that C's shareholders
have a majority or controlling interest in the entities

to which the "indirect" loans were made in these circumstances.
C also contends that R cannot make determinations
with respect to it without making corresponding
adjustments to the income taxes of its shareholders.  R
argues that such adjustments are not a prerequisite to
the making of a determination with respect to one of
the parties to a sec. 7872, I.R.C., below-market-
interest loan.

Held:  Sec. 7872(c)(1)(C), I.R.C., applies to C's
loans to each of its shareholders and to C's loans to
each of the family-owned entities in which C's
shareholders held an interest.  Held, further:  Sec.
7872, I.R.C., requires "consistent" treatment but does
not require that R make both adjustments concurrently
or determine one before determining the other.

Towner Leeper, for petitioner.

Gerald L. Brantley, for respondent.

OPINION

GERBER, Judge:  Respondent determined income tax

deficiencies in petitioner's taxable years ended August 31, 1994

and 1995, in the amounts of $19,094 and $16,944, respectively.

The deficiencies are attributable to respondent's determination

that petitioner made "below-market loans" within the meaning of

section 7872.[1]  More particularly, we consider a question of

first impression of whether the provisions of section 7872 apply

---

[1] All section references are to the Internal Revenue Code in
effect for the years in issue, and all Rule references are to
this Court's Rules of Practice and Procedure, unless otherwise
indicated.

where petitioner makes loans to its shareholders and to entities owned in part by its shareholders and in part by other members of the same family.

Background

Petitioner is a corporation that, at all pertinent times, had its principal place of business in Las Cruces, New Mexico. Petitioner was engaged in cotton brokerage and, for Federal income tax purposes, reported gross income of $1,276,431 and $1,913,962 for its fiscal 1994 and 1995 tax years, respectively. At all pertinent times, the shares of stock of petitioner were owned by family members related by blood or marriage as follows:

| Shareholders | Ownership (%) |
|---|---|
| William Tharp | 16.8 |
| Est. of Glenda Tharp | 16.7 |
| Charles Tharp | 33.5 |
| Claudia Keith | 33.0 |
| Total | 100.0 |

William and Charles Tharp and Claudia Keith are all children of Claud Tharp, who did not own any shares of petitioner. Glenda Tharp, now deceased, was the wife of William Tharp.

During the fiscal years in issue, shareholders of petitioner and related family members owned or had an interest in certain entities as follows: (1) Charles Tharp and his son, Craig Tharp, each owned a 50-percent interest in the capital and profits of the Buena Vista Partnership; (2) the Dona Ana Land Corp.'s shares of stock were owned in the following percentages: William

Tharp--14.5 percent, Charles Tharp--29 percent, Claudia Keith--9 percent, Claud Tharp--33 percent, and the Estate of Glenda Tharp--14.5 percent; (3) capital and profit interests in the Tharp Family Partnership were owned, as follows: William Tharp--10 percent, Charles Tharp--10 percent, Claudia Keith--10 percent, and each child of William, Charles, and Claudia owned a 10-percent interest, accounting for the remaining 70 percent; (4) capital and profit interests in the Tharp Farms Partnership were owned as follows: William Tharp--30 percent, Charles Tharp--30 percent, Claudia Keith--20 percent, Claud Tharp--20 percent; and (5) capital and profit interests in the Tharp Enterprises Partnership were owned as follows: William Tharp--25 percent, Charles Tharp--25 percent, Claudia Keith--25 percent, and Claud Tharp--25 percent. The various interests of petitioner's shareholders and of other family members in the entities to which indirect loans were made are reflected in a chart attached to this opinion as an appendix.

The following interest-free loans were made by petitioner directly to shareholders:

| Borrower | Demand Note Dated | Amount |
|---|---|---|
| Charles Tharp | Aug. 31, 1994 | $29,978.74 |
| William Tharp | Aug. 31, 1994 | 11,100.00 |
| William Tharp | Aug. 31, 1994 | 28,113.21 |

Respondent's agent computed interest at the applicable Federal rate on the loans directly to shareholders in the aggregate

amounts of $3,143 and $3,416 for petitioner's fiscal tax years ended August 31, 1994 and 1995, respectively.

The following interest-free loans, evidenced by promissory notes, were made by petitioner to entities that were, in some part, owned by petitioner's shareholders:

| Borrower | Demand Note Dated | Amount |
| --- | --- | --- |
| Buena Vista Partnership | Aug. 31, 1994 | $27,575.14 |
| Dona Ana Land Corp. | Aug. 31, 1994 | 50,412.27 |
| Tharp Family Partnership | Aug. 31, 1994 | 2,599.12 |
| Tharp Farms Partnership | Aug. 31, 1994 | 581,889.39 |
| Tharp Enterprises--Farms[1] | Aug. 31, 1994 | 401,855.24 |
| Tharp Enterprises--Equipment[1] | Aug. 31, 1994 | 16,200.00 |

[1] It appears that these two loans were both made to Tharp Enterprises Partnership and that the "Farms" and "Equipment" designations reflected the bank accounts into which they were to be deposited.

During the taxable years under consideration, an additional $111,707.20 interest-free loan was extended by petitioner to Tharp Enterprises Partnership that was not evidenced by a promissory note.

Respondent's agent computed interest at the "applicable federal rate" on the indirect loans (not directly to shareholders) in the aggregate amounts of $45,816 and $46,447 for the fiscal tax years ended August 31, 1994, 1995, respectively. The total amounts of imputed interest determined by respondent for petitioner's 1994 and 1995 fiscal years were $48,959 and

$49,836.[2]  Respondent's agent's initial computation and the amounts set forth in the notice of deficiency were computed on a fiscal year basis.  A second computation by respondent, submitted for trial purposes, was based on imputed interest for the 1994 and 1995 calendar years in the aggregate amounts (including direct and indirect loans) of $19,476 and $59,832, respectively.

Discussion

I. Procedural/Evidentiary Matter

This case was submitted fully stipulated by the parties under Rule 122.  Respondent, however, reserved an objection to the admissibility (relevance) of Exhibit 17-P, which is respondent's revenue agent's report that was prepared and given to petitioner before issuance of the notice of deficiency. Respondent contends that the revenue agent's report is not admissible (relevant) in this instance.  In support of his position, respondent points out that the Court considers the parties' positions de novo and the pre-deficiency-notice administrative record is therefore irrelevant.  See Greenberg's Express, Inc. v. Commissioner, 62 T.C. 324 (1974).  Respondent acknowledges, however, that in certain limited circumstances, the Court will "look behind the deficiency notice".  Such instances

---

[2] In the notice of deficiency, respondent determined $49,836 of 1995 interest.  The correct amount, however, should have been $49,863.  The transposition of the numbers 3 and 6 caused a $27 difference.

include unconstitutional conduct by respondent's employees, see, e.g., Riland v. Commissioner, 79 T.C. 185 (1982), and certain types of illegal income cases, see, e.g., Shriver v. Commissioner, 85 T.C. 1 (1985). Petitioner does not contend that respondent's determination is arbitrary or that unconstitutional conduct occurred. We agree with respondent and find no reason to consider respondent's agent's pre-deficiency-notice report in reaching our decision. Respondent's objection is sustained with respect to proposed Exhibit 17-P.

II. Section 7872

The primary question for our consideration concerns whether petitioner must include interest, pursuant to section 7872, attributable to interest-free loans made to entities (a corporation and three partnerships) owned in whole or part by its shareholders. Before the enactment of section 7872, the Commissioner was generally unsuccessful in attempting to attribute or impute income from interest-free or below-market loans.[3] See Dean v. Commissioner, 35 T.C. 1083 (1961); Greenspun v. Commissioner, 72 T.C. 931 (1979), affd. 670 F.2d 123 (9th Cir. 1982); Suttle v. Commissioner, 625 F.2d 1127 (4th Cir. 1980), affg. T.C. Memo. 1978-393; Martin v. Commissioner, 649 F.2d 1133

_____

[3] Respondent, however, was ultimately successful, in a gift tax context, in situations where below-market loans were made between family members. See Dickman v. Commissioner, 465 U.S. 330 (1984).

(5th Cir. 1981); <u>Beaton v. Commissioner</u>, 664 F.2d 315 (1st Cir. 1981), affg. T.C. Memo. 1980-413.

Congress, in 1984, addressed these and other related concepts by enacting section 7872. See Deficit Reduction Act of 1984, Pub. L. 98-369, sec. 172(a), 98 Stat. 699. That section concerns the subject of "below-market loans" in several contexts, including those between family members, partnership/partner, employer/employee, corporation/shareholder, and other related-party categories. We described the general effect of section 7872 in <u>KTA-Tator, Inc. v. Commissioner</u>, 108 T.C. 100, 101-102 (1997), as follows:

> Section 7872 sets forth the income and gift tax treatment for certain categories of "below market" loans (i.e., loans subject to a below-market interest rate). Section 7872 recharacterizes a below-market loan as an arm's-length transaction in which the lender made a loan to the borrower in exchange for a note requiring the payment of interest at a statutory rate. As a result, the parties are treated as if the lender made a transfer of funds to the borrower, and the borrower used these funds to pay interest to the lender. The transfer to the borrower is treated as a gift, dividend, contribution of capital, payment of compensation, or other payment depending on the substance of the transaction. The interest payment is included in the lender's income and generally may be deducted by the borrower. See H. Conf. Rept. 98-861, at 1015 (1984), 1984-3 C.B. (Vol. 2) 1, 269; Staff of Joint Comm. on Taxation, General Explanation of the Revenue Provisions of the Deficit Reduction Act of 1984, at 528-529 (J. Comm. Print 1984).

Petitioner advances several arguments in support of its overall contention that the loans it made do not come within the provisions of section 7872. Petitioner contends that it has

suffered by the Government's 15-year failure to issue final regulations, although Congress, in the 1984 statute, mandated that certain legislative regulations be promulgated. Petitioner also contends that case precedent, before the 1984 enactment of section 7872, established that imputed interest should apply to a loan by a corporation only if the loan is to a sole or controlling shareholder. In addition, petitioner contends that section 7872 legislative history supports its contention that the section is limited to situations involving controlling shareholders.

The below-market loan provisions of section 7872 apply, among other circumstances, to "Any below-market loan directly or indirectly between a corporation and any shareholder of such corporation." Sec. 7872(c)(1)(C). In that respect, petitioner reads section 7872 as referring to a loan by a corporation to its majority or controlling shareholder or to a loan by a corporation to an entity in which one of the lending corporation's shareholders owns a majority interest. Petitioner relies on the fact, in this case, that there is no one individual with a majority of its shares or who is a controlling shareholder of petitioner. Petitioner also relies on the fact that no individual shareholder of petitioner had a majority or controlling interest in any of the entities to which "indirect"

loans were made.  We consider each of petitioner's contentions separately.

The Failure To Issue Final Regulations--Petitioner contends that the Government's failure, for almost 15 years, to issue final or permanent regulations as mandated by Congress in section 7872(h)(1) was to petitioner's detriment.[4]  That section contains the requirement that the Secretary prescribe regulations in several broad areas, including for the

> purpose of assuring that the positions of the borrower and lender are consistent as to the application (or nonapplication) of * * * [section 7872] and  * * * exempting * * * transactions the interest arrangements of which have no significant effect on any Federal tax liability of the lender or the borrower.

Sec. 7872(h)(1)(B) and (C).  Petitioner contends that if final regulations had been promulgated, it would have been to its benefit.  Petitioner, however, has not identified any particular benefit that would have been conferred, the substance of any regulations envisioned by petitioner, or the reason(s) for such regulations.

The Commissioner, during 1985 and before the time the loans herein were made, published proposed regulations.  See secs.

---

[4] Petitioner's argument is obscure in that no explanation is provided as to how the issuance of the final regulations would have provided a better situation for petitioner or changed the outcome of this case.  It is more likely than not that respondent's litigating position and regulation(s) would have been equivalents.  Petitioner's concern about the absence of final regulations is also less compelling where, as here, some guidance was provided by the issuance of proposed regulations.

1.7872-1 through 1.7872-13, Proposed Income Tax Regs., 50 Fed. Reg. 33556-33569 (Aug. 20, 1985). The Commissioner also published one temporary regulation. See sec. 1.7872-5T, Temporary Income Tax Regs., 50 Fed. Reg. 33521 (Aug. 20, 1985). Petitioner contends that the proposed regulations do not have the force and effect of law and are not to be given any more deference than respondent's litigating position, citing KTA-Tator, Inc. v. Commissioner, supra at 102-103.

The proposed regulations did provide taxpayers with guidance as to the Commissioner's section 7872 position regarding certain aspects of the issues in this case and the broad areas Congress mandated for legislative regulations. We note that the proposed and temporary regulations were published substantially in advance of the making of the loans in question. In that regard, the Commissioner's proposed and temporary regulations contain exemptions from section 7872, de minimis rules, and interpretations and rules regarding below-market loans. The proposed and temporary regulations are generally unfavorable to petitioner's position. Accordingly, if the Commissioner had converted the proposed regulations to final or permanent status, it would not have been beneficial to petitioner or its shareholders.

Respondent has scrupulously avoided reliance upon or reference to the proposed regulations. In response to

petitioner's complaint about the absence of final regulations, respondent argues that the statute is clear and unambiguous concerning the issues before the Court and that there is no need to seek interpretation or guidance from any regulation.  In addition, respondent contends that the section 7872(h) areas for which regulations were mandated and which were referenced by petitioner have no bearing on the questions before the Court.

We first consider the statutory language in our search for an answer.  See United States v. American Trucking Associations, Inc., 310 U.S. 534, 542-543 (1940); Hospital Corp. of Am. v. Commissioner, 107 T.C. 116, 128 (1996).  If the language of the statute is clear, we need look no further in deciding its meaning.  See Sullivan v. Stroop, 496 U.S. 478, 482 (1990).

Petitioner's Controlling Shareholder Argument--Below-market loans between corporations and shareholders may come within the provision of section 7872.  In particular, section 7872(c)(1)(C) makes section 7872 applicable to "Any below-market loan directly or indirectly between a corporation and any shareholder of such corporation."  The loans in question were without interest, and, if the other threshold requirements are met, the loans would be subject to section 7872.

Petitioner's primary attack on respondent's determination is based on the fact that each of its shareholders has less than a majority or controlling interest in petitioner and that the

entities to which petitioner made (indirect) loans were not owned entirely by petitioner's shareholders. In support of its approach, petitioner first focuses on the statutory language. Petitioner argues that the singular use of the term "shareholder" in the phrase "between a corporation and any shareholder" is intended to reflect that attribution rules do not apply. Respondent's counsel, for the record, states that there was no reliance on the attribution rules of sections 267 and 318 in this case. Section 7872 does not require that a corporate loan be made to a controlling or majority shareholder. The statutory use of the term "any" preceding the term "shareholder" would obviate the need for respondent to rely on attribution rules for application of section 7872 in connection with a transaction with a minority shareholder. Petitioner's argument concerning the loans made directly to its shareholders is refuted by the plain language of the statute.

As to the "indirect" loans, respondent's argument is that petitioner's shareholders are members of the same family and that they, along with other family members, own the entities to which indirect loans were made. In that regard, Claud Tharp (father of three of petitioner's shareholders and father-in-law of the fourth) is the only nonshareholder with a substantial interest in the two entities to which the vast majority of the indirect loans were extended.

Petitioner also argues that court holdings addressing "below-market loans" fact patterns, both before and after the enactment of section 7872, concerned majority or controlling shareholders. Petitioner concludes that these cases, therefore, stand for the proposition that without control by a shareholder there can be no imputed interest. On that point, however, insofar as it pertains to the loans made directly to petitioner's shareholders, the terms of section 7872(c)(1)(C) are clear; i.e., it applies to loans "between a corporation and _any_ shareholder" (emphasis added). Again, there is no ambiguity or room for interpretation of the statutory language regarding its application to shareholders who are not controlling or majority shareholders. It appears, to some extent, that section 7872 was enacted in response to the cases that petitioner has relied upon and in which the Commissioner was generally unsuccessful in pursuing below-market loan situations.

In addition, the pre- and post-enactment opinions, although they involve controlling shareholder fact patterns, do not reflect any consideration of a threshold requirement that below-market loans be made to a majority shareholder.[5] Finally,

---

[5] To the contrary, the Commissioner was unsuccessful in the corporation/shareholder cases for reasons that had no relationship to the number of shares held by the taxpayer. Although share ownership may have some relationship to dividend and constructive dividend situations, that aspect was not focused upon in the line of cases referenced by petitioner.

petitioner did not provide a reason why Congress would have intended that the provisions of section 7872 be limited to loans made to a majority shareholder. To the contrary, it appears that Congress did not intend to limit the focus of section 7872 to loan transactions between controlled entities. Section 7872 addresses below-market loans in several settings where there is no ownership or control factor whatsoever; i.e., employer/ employee and independent contractor/client. The intent and context of section 7872 is not limited to situations where there is control between the lender and the borrower or control over the ultimate borrowing entity in "indirect" loan situations. This general absence of a control requirement is bolstered by the specific language of section 7872(c)(1)(C) causing the statute to apply to "any shareholder".

Petitioner also refers to a portion of H. Conf. Rept. 98-861 (1984), 1984-3 C.B. (Vol. 2) 1 (legislative history for section 7872), in support of its position that Congress intended to limit corporate section 7872 loans to situations involving controlling shareholders. As part of a paragraph explaining "Family loans and non-family demand loans", the House report contains the following statement:

> In the case of a demand loan from a closely held corporation to a controlling shareholder, the transfer would be treated as a distribution with respect to the stock of the distributing corporation and be taxed to the shareholder as a dividend to the extent of the

distributing corporation's earnings and profits under section 301.

H. Conf. Rept. 98-861, supra at 1013, 1984-3 C.B. (Vol. 2) at 267.

Petitioner's quotation from the House report is not compelling because it is taken out of context and appears to be an example of the application of section 7872 in a corporate setting involving a demand note.  The above-quoted House report language is not designed to limit the application of section 7872 to situations involving controlling shareholders.  The reference to "a controlling shareholder" may also relate to the corresponding "dividend" mentioned later in the quoted sentence. More importantly, the statutory language "any shareholder" is clear, without limitation, and unambiguous, and there is no need to seek out the legislative intent in the underlying legislative history.  The portion of the legislative history relied on by petitioner is also far from being directly on point or probative in support of petitioner's position.  Accordingly, we hold that section 7872 may apply to a loan to a majority or a minority shareholder.

Petitioner's Indirect Loan Argument--We next consider petitioner's arguments that section 7872 should not apply to the "indirect loan" situations.  Petitioner declares that 7 of the 10 loans in question were "indirect" (not made directly to shareholders) and do not come within the purview of section 7872.

More particularly, petitioner contends that the "indirect loans" were made by petitioner to partnerships or entities in which none of petitioner's shareholders individually held a controlling interest.  Finally, petitioner points out that some of the partners or owners of the entities that received loans were not shareholders of petitioner.

The specific concern raised by petitioner's arguments focuses upon petitioner's shareholders' partial interest in the entity that receives the benefit of the below-market loan and in the receiving entity.  Although the borrowing entity receives the full benefit of the indirect loan, petitioner's shareholder(s) are each only partially benefited by the loan because of their less than complete ownership of the borrowing entity.  An adjunct question concerns the treatment of a nonshareholder of petitioner who may be benefited because of his ownership interest in the borrowing entity.

The statute includes "Any below-market loan directly or indirectly between a corporation and any shareholder of such corporation."  Sec. 7872(c)(1)(C).  Indirect loans are includable, but the statute does not specifically address the possibility that indirect loans may ultimately benefit a person or entity other than a shareholder or that the shareholder may ultimately receive less benefit than the full amount lent.  The proposed regulations generally address indirect loans by

[restructuring them] as two or more successive below-market loans ("deemed loans") * * *, as follows:

> (i) A deemed below-market loan made by the named lender to the indirect participant [e.g., a shareholder of the lender]; and

> (ii) A deemed below-market loan made by the indirect participant to the borrower [third party or nonshareholder].

Sec. 1.7872-4(g)(1)(i) and (ii), Proposed Income Tax Regs., 50 Fed. Reg. 33561 (Aug. 20, 1985). Where one corporation makes a loan to another under common control, the proposed regulations restructure it as a loan from the lending corporation to its parent followed by a loan from the parent to the borrowing entity. Thus the proposed regulations treat the entire loan as being made first to the shareholder(s) of the lender.

The proposed regulations do not directly address the questions, raised by petitioner, concerning whether a nonshareholder would be subject to section 7872 under the facts before us or how the nonshareholder would be treated in connection with any benefit received from the receipt of a below-market loan by the borrowing entity.[6] Although those questions are raised and argued by petitioner, we do not have before us

---

[6] The remainder of the proposed regulations concerning indirect loans contains some examples and focuses on the following situations: (1) Applying sec. 7872 separately to each deemed loan, and (2) dealing with circumstances where intermediaries are used to "avoid the application of section 7872(c)(1)(A), (B), or (C)". Sec. 1.7872-4g(2), Proposed Income Tax Regs., 50 Fed. Reg. 35561 (Aug. 20, 1985).

questions about how the shareholders or nonshareholders are individually taxed. Here, we have jurisdiction solely over whether petitioner, a corporation, is subject to section 7872 and whether imputed interest arises from the interest-free loans it made to its shareholders and the related entities.

Petitioner, however, is contending that distortion is caused by the application of section 7872 to situations where a corporation makes loans to an entity in which both shareholders and nonshareholders of the lending corporation have ownership interests. Petitioner explains that Claud Tharp, who owned no shares in the lending corporation (petitioner), did own 20 percent of the Tharp Farms Partnership and 25 percent of Tharp Enterprises Partnership, entities that received most of the proceeds of the indirect below-market loans. Petitioner's argument contains the implication that respondent would be unable to make dividend income adjustments to all participants in the entity to which indirect loans are made. Petitioner theorizes that respondent's alleged inability should preclude respondent from determining that the lending corporation had income attributable to the below-market interest. Petitioner's position is somewhat myopic because section 7872 is not limited to transactions between corporations and shareholders. It may result in below-market loans being treated in part as gifts, dividends, contributions of capital, payments of compensation, or

some other type of payment, depending on the substance of the transaction. Accordingly, there would be no lack of continuity where an indirect below-market loan was made by a corporation to an entity that was owned by the lender's shareholders and nonshareholders of the borrowing corporation.

In that same vein, respondent contends that there is no statutory prerequisite that a corresponding or correlative adjustment be made to the tax of a hypothetical borrower before making an adjustment to the tax of the lender. Although respondent states that he is able to determine an adjustment with respect to petitioner's shareholders, he contends that his failure to do so would not necessarily preclude a determination with respect to petitioner's taxes. In support of this contention, respondent relies on an explanation in KTA-Tator, Inc. v. Commissioner, 108 T.C. at 106-107, that dividend income determined by the Commissioner may be offset by the shareholder's interest deductions, but the lending corporation would not be entitled to a corresponding deduction attributable to the deemed dividend distribution against its imputed interest income. Although the holding of KTA-Tator, Inc. has no direct bearing on the questions involving "indirect" loans, the discussion in that case illustrates that one party to a below-market loan may end up with a tax liability, and the other may incur no net tax effect. That, however, does not specifically focus on the question of

what is meant by "consistency" between the lender and the borrower.

In section 7872(h)(1)(B), the Secretary was mandated to prescribe "regulations for the purpose of assuring that the positions of the borrower and lender are consistent as to the application (or nonapplication) of this section". We do not read that language as requiring regulations that provide for correlative or numerically corresponding adjustments between a lender and a borrower. We understand that language to call for regulations that ensure that both parties to the transaction would or would not be subject to the effect of section 7872. So, for example, if it were determined that an employer made a below-market loan to a nonshareholder employee under section 7872, to be consistent, the Commissioner would be required to consistently treat both the employee and the employer as subject to the provisions of section 7872. Treating them consistently may require the Commissioner to permit appropriate deductions to a party to a loan transaction as though the interest had actually been paid. If, however, the Commissioner was barred from treating one of the parties to the loan consistently because of the expiration of the period for assessment, that would not

preclude the determination of appropriate income or deductions for a taxpayer whose period for assessment remained open.[7]

Petitioner's argument also raises the adjunct question of whether respondent's inability to make adjustments to nonshareholders of the borrowing entities has any effect on the application of section 7872.  With respect to these questions, the statutory language applying section 7872 directly or indirectly to loans or to any shareholder does appear to answer questions of whether the statute applies to indirect loans involving nonshareholders.  This is a situation where the issuance of final regulations might have been helpful to address the tax effect of the below-market loans on the recipients, but the taxability with respect to the lender is adequately set out in the statute.

Because section 7872 is to be applied to a loan made "directly or indirectly" between a corporation and any shareholder of the corporation, we find the ordering approach used in the proposed regulations to be an effective way to address the issue we consider here.  Under the proposed

_____

[7] The record does not reveal whether respondent made "consistent" or any determinations with respect to shareholders or nonshareholders or whether respondent is currently limited in his ability to do so.  Petitioner merely argues, in the abstract, that respondent should not be permitted to make the determination in this case without making one for the shareholders or perhaps others.  If respondent has not already done so, we do not believe that petitioner's shareholders are inviting respondent to make deficiency determinations against them under sec. 7872.

regulations, indirect loans are treated as from the lender to the indirect participant and then to the borrower.[8]  That is one logical method to determine the effect of the below-market loans on all the participants and to treat direct and indirect loans similarly.  In this setting, the loans are being made by a family-owned corporation indirectly to shareholders through family-owned entities.  The ability to make such loans depends on petitioner's shareholder(s), and so the whole amount of the loan is first attributable to the shareholders' relationship with the lender.  After that point, the flow from the lender's shareholders to others, whether partners, nonshareholders, or some other relationship, would be subject to section 7872 only if that transaction came within the statutory ambit.  The effect and handling of any separately hypothecated loans after those considered to the lender's shareholders present a more complex question that would be better addressed in regulations and is one we need not address here.

We recognize that there could be some questions about the amount of any dividend to the shareholder(s) in an indirect loan situation, especially where the borrowing entity does not

---

[8] The proposed regulation restructures indirect loans into separate loans as follows:  "(i) A deemed below-market loan made by the named lender to the indirect participant; and (ii) A deemed below-market loan made by the indirect participant to the borrower."  Sec. 1.7872-4(g)(1)(i) and (ii), Proposed Income Tax Regs., 50 Fed. Reg. 35561 (Aug. 20, 1985).

comprise solely shareholders. We need not answer those questions in this setting, however, because we are able to deal with the entire loan from the corporation to the shareholder within the statutory framework and without reference to any regulation. To the extent that Tharp family members who were not shareholders received some benefit from the below-market loans, they did so only because the lender's shareholders (who were also Tharp family members) made the decision or choice that they so benefit. Also, because of our holding on the ordering of the indirect loans, any benefit received by nonshareholders would have been received from petitioner's shareholders.

Parts of section 7872 (other than the one addressing corporations and shareholders) concern below-market loans in several types of situations. None of the various section 7872 applications addressing below-market loans require that each dollar lent benefit the intended borrower directly or fully. We know this because the statute applies to indirect loans, and, by definition, such loans can be to a person or entity other than the shareholder or corporation referenced in section 7872(c)(1)(C).

Respondent, on brief, argues that "the interest-free demand loans were made by petitioner to the borrowing entities solely to

confer an economic benefit * * * to petitioner's shareholders, who also owned and controlled the borrowing entities."[9]

We agree with respondent that the circumstances in this case are such as Congress intended would trigger the lender's recognition of forgone interest under section 7872(c)(1)(C). Petitioner would have us focus on the fact that no shareholder of petitioner individually held a majority of petitioner's stock and, as to indirect loans, that persons who were not shareholders of petitioner owned interests in the entities that received the below-market loans. Petitioner's focus, however, overlooks the fact that all of the shareholders of petitioner were part of the same family and, of necessity, collectively agreed to make or permit the making of below-market loans both directly to themselves and indirectly to their family-controlled entities. In the same vein, the "indirect borrowing entities" were exclusively composed of family members, including petitioner's shareholders and in some instances the shareholders' father or children.

The below-market loans were being made within a tightly controlled conglomeration of Tharp family members and entities

---

[9] Respondent does not rely on the attribution provisions of sec. 267 or 318 for his interpretation of the language of sec. 7872. Respondent does, however, ask us to focus on the fact that petitioner and the entities to which it made loans were all owned and controlled by persons having a close family relationship. No ownership interest in any of those entities was held by an individual outside of the family.

for the benefit of Tharp family members, most of whom were shareholders of petitioner. This is the type of situation that section 7872 was intended to address. In the setting of this case, if there had been significant ownership of the borrowing entities by anyone who did not belong to the Tharp family, we do not think it likely that interest-free loans to those entities would have been made by petitioner. In view of the foregoing, we hold that the direct and indirect loans made by petitioner come within the provisions of section 7872(c)(1)(C) and that interest should be imputed to petitioner.

That does not end our inquiry, however, because respondent, in the notice of deficiency, computed the amount of interest to be imputed to petitioner on the basis of the loans outstanding during each of petitioner's taxable years. For tax purposes, petitioner used a fiscal year ending on August 31. Petitioner, however, argues that section 7872 requires an interest computation based on a calendar year. Section 7872(a)(2) provides that

> Except as otherwise provided in regulations prescribed
> by the Secretary, any foregone interest attributable to
> periods during any calendar year shall be treated as
> transferred (and retransferred) under paragraph (1) on
> the last day of such calendar year.

The Commissioner did not publish any final or temporary regulations that vary from the rule stated in section 7872(a)(2).

The total amounts of imputed interest determined by respondent for petitioner's 1994 and 1995 fiscal years were $48,959 and $49,836, respectively. In his reply brief, respondent provides a second computation of imputed interest for the 1994 and 1995 calendar years in the aggregate amounts (including interest on both direct and indirect loans) of $19,476 and $59,832, respectively. In that regard, respondent concedes in his reply brief that "Forgone interest is treated as transferred by the borrower to the lender as interest on the last day of the calendar year. I.R.C. § 7872(a)(2)".

Accordingly, respondent concedes that his notice determination amounts were not correctly computed. The proposed corrected computations result in a substantially reduced interest amount for petitioner's 1994 tax year from $48,959 to $19,476 and an increased interest amount for petitioner's 1995 tax year from $49,836 to $59,832. With respect to respondent's concessions,

which we accept, we leave the parties to compute the revised deficiencies, if any, under Rule 155.[10]

     To reflect the foregoing,

                                   <u>Decision will be entered under</u>

                         <u>Rule 155</u>.

---

[10] To the extent that respondent's revised 1995 computation of interest is greater than the amount determined in the notice of deficiency, respondent is limited by the amount of corporate income tax deficiency determined in the notice because of the timing of the concession (by means of reply brief) and because respondent has not sought to amend his answer and to assert an increased deficiency under sec. 6214.

Summary of Ownership Interests

Ownership Interests in Rountree Cotton Co., Inc.

| | William Tharp | Charles Tharp | Claudia Keith | Estate of Glenda Tharp |
|---|---|---|---|---|
| Rountree Cotton Co., Inc. | 16.8% | 33.5% | 33.0% | 16.7% |

Ownership Interests in Other Entities

| | William Tharp | Charles Tharp | Claudia Keith | Claud Tharp | Estate of Glenda Tharp | Others |
|---|---|---|---|---|---|---|
| Buena Vista Partnership | -- | 50% | -- | -- | -- | [1]50% |
| Dona Ana Land Corp. | 14.5% | 29 | 9% | 33% | 14.5% | -- |
| Tharp Family Partnership | 10.0 | 10 | 10 | -- | -- | [2]70 |
| Tharp Farms Partnership | 30.0 | 30 | 20 | 20 | -- | -- |
| Tharp Enters. Partnership | 12.5 | 25 | 25 | 25 | 12.5 | -- |

[1] Craig Tharp, the son of Charles Tharp.

[2] Each of the following persons owned 10 percent:  William "Glenn" Tharp and John Tharp (the children of William Tharp); Craig Tharp and Laura Kendrick (the children of Charles Tharp); and Michael Keith, Stanley Keith, and Michelle Gardette (the children of Claudia Keith).