T.C. Summary Opinion 2008-86

UNITED STATES TAX COURT

MICHAEL LEON AND KARIN POLICKY TILLEY, Petitioners v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 26450-06S.                    Filed July 21, 2008.

Michael Leon and Karin Policky Tilley, pro sese.

Frederick Lockhart, Jr., for respondent.

ARMEN, Special Trial Judge:  This case was heard pursuant to
the provisions of section 7463 of the Internal Revenue Code in
effect when the petition was filed.[1]  Pursuant to section
7463(b), the decision to be entered is not reviewable by any

_____

[1]  Unless otherwise indicated, all subsequent section
references are to the Internal Revenue Code in effect for 2004,
the taxable year at issue, and all Rule references are to the Tax
Court Rules of Practice and Procedure.

other court, and this opinion shall not be treated as precedent for any other case.

Respondent determined a deficiency in petitioners' Federal income tax of $28,579, as well as an accuracy-related penalty under section 6662(a) of $3,555.80, for the taxable year 2004. The issues for decision are: (1) To what extent the distributions received from Ms. Tilley's section 401(k) plan are taxable; (2) in what year they are taxable; (3) whether petitioners are liable for the additional tax imposed on early section 401(k) plan withdrawals under section 72(t); and (4) whether petitioners are liable for a section 6662(a) negligence penalty for not having included in gross income the taxable distributions received from Ms. Tilley's section 401(k) plan in 2004 on their 2004 Federal income tax return.

## Background

Some of the facts have been stipulated, and they are so found. We incorporate by reference the parties' stipulation of facts and accompanying exhibits.

Petitioners resided in Colorado at the time the petition was filed.

Ms. Tilley began employment with American City Business Journals, Inc. in 1992, and she participated in the company's section 401(k) plan (401(k) plan or the plan) until her employment was terminated in October 2003. In late 1999, Ms.

Tilley borrowed $40,958 from her plan account to purchase a home. She signed a Promissory Note and Security Agreement in respect of the loan which was governed by the terms of the plan. The loan was repayable with interest through semimonthly payroll deductions over a 10-year term. Ms. Tilley made the scheduled payments until her employment was terminated.

The outstanding balance of the loan became due and payable at the time of Ms. Tilley's termination, but petitioners did not have the money to satisfy the obligation. No payments were made on the loan after her termination. Pursuant to the terms of the loan and the plan, the loan went into default in early 2004, after the expiration of the 90-day grace, or cure, period.

In March 2004, Fidelity Investments sent Ms. Tilley a letter,[2] notifying her that she had a deemed distribution from the plan equal to the then-unpaid loan balance of $31,176.99. The letter also identified this distribution as being fully taxable and without any applicable statutory exception.[3]

On April 19, 2004, Fidelity sent Ms. Tilley a check for $61,479.94, which represented the $76,849.93 balance of her plan account less $15,369.99 in Federal tax withholding. Petitioners

---

[2] Although Fidelity Investments sent the letter to Ms. Tilley, Fidelity Management Trust Co. is listed as the plan's administrator. We use the name Fidelity to refer to these entities interchangeably.

[3] Ms. Tilley, born in 1954, was not 59½ at the time of the distribution.

deposited the entire $61,479.94 into their checking account rather than depositing it into the individual retirement account (IRA) they had established with Fidelity for Ms. Tilley.

Fidelity issued a Form 1099-R, Distributions From Pensions, Annuities, Retirement or Profit-Sharing Plans, IRAs, Insurance Contracts, etc., for 2004 reporting a gross distribution to Ms. Tilley of $108,026.92. The distribution amount reflected the gross distribution from the remainder of Ms. Tilley's 401(k) plan as well as the unpaid balance on the loan. Although petitioners included two other Form 1099-R distributions in their income on their 2004 Federal income tax return, petitioners did not include this distribution. Respondent determined in the notice of deficiency that petitioners were required to include Ms. Tilley's distribution in income. Respondent also determined that the distribution was subject to the 10-percent additional tax under section 72(t) on early distributions from qualified retirement plans. Further, respondent determined that petitioners were subject to a penalty under section 6662(a).

Discussion

A. Taxable Distributions

1. Burden of Proof

Generally, the Commissioner's determinations are presumed correct, and the taxpayer bears the burden of proving those determinations wrong. Rule 142(a); INDOPCO, Inc. v.

Commissioner, 503 U.S. 79, 84 (1992); Welch v. Helvering, 290 U.S. 111, 115 (1933). Under section 7491 the burden of proof may shift from the taxpayer to the Commissioner if the taxpayer produces credible evidence with respect to any factual issue relevant to ascertaining the taxpayer's tax liability. Sec. 7491(a)(1). In this case there is no such shift because petitioners did not allege that section 7491 was applicable, nor did they establish that they fully complied with the requirements of section 7491(a)(2). The burden of proof remains on petitioners.

2. Balance of the 401(k) Plan Account

Generally, a distribution from a qualified plan such as Ms. Tilley's 401(k) plan is includable in the distributee's gross income in the year of distribution. See secs. 61(a)(11), 72, 401(a), 402(a), 408(d), 4974(c)(1). Therefore, the balance of Ms. Tilley's 401(k) plan account, $76,849.93, was disbursed in a taxable distribution to Ms. Tilley in April 2004. Accordingly, $15,369.99 in Federal taxes was withheld by Fidelity.

Petitioners testified that they had intended to roll over the money into Ms. Tilley's IRA. Amounts moved from one qualified plan to another may be treated as a rollover contribution if the transaction is completed within 60 days and meets certain other requirements. Sec. 408(d)(3). Partial rollovers are permitted. Sec. 408(d)(3)(D). Petitioners did not

take advantage of the rollover provisions.  Regardless of their original intentions, petitioners cashed the check and spent the money.

Four years later, petitioners urge the Court to grant them a waiver of the 60-day requirement.  See sec. 408(d)(3)(I).  They argue that Fidelity made a mistake sending them the check and that they would now be willing to put the money into Ms. Tilley's IRA.  On these facts we decline to grant the waiver, and we do so without offense to equity or good conscience.

3.  <u>Loan Balance</u>

Section 72(p)(1)(A) treats loans from qualified plans as taxable distributions.  See sec. 72(p)(1)(A), (4)(A)(i)(I); <u>Plotkin v. Commissioner</u>, T.C. Memo. 2001-71; <u>Patrick v. Commissioner</u>, T.C. Memo. 1998-30, affd. per curiam without published opinion 181 F.3d 103 (6th Cir. 1999); <u>Prince v. Commissioner</u>, T.C. Memo. 1997-324.  However, section 72(p)(2)(A) provides an exception for certain loans; the mere making of a loan that does not exceed one-half of the nonforteitable accrued benefit of the employee under the plan, that is repayable within 5 years, and that provides for substantially level amortization does not give rise to a deemed distribution.  See sec. 72(p)(2); see also sec. 72(p)(1)(B)(ii) (providing an exception to the 5-year repayment requirement for loan proceeds used to purchase a primary residence).

Although a loan may initially satisfy the requirements of section 72(p)(2)(A) at the time that it is made, a deemed distribution may nevertheless occur subsequently because of the failure to repay the loan in accordance with the loan agreement. Sec. 72(p)(2). Accordingly, if a default occurs, a distribution is deemed to occur at that time in the amount of the then-outstanding balance of the loan. It is clear that Ms. Tilley defaulted on her loan and thus had a deemed distribution from her 401(k) plan account; the issue here is the date on which the default--and thus the deemed distribution--occurred.

Petitioners argue that because the entire loan balance became due and payable upon Ms. Tilley's termination of employment pursuant to an acceleration clause in the plan documents ("Upon * * * termination of employment, the entire outstanding principal and accrued interest shall be immediately due and payable".), the missed installment payment took place in October 2003. Petitioners argue that any distribution, therefore, took place in 2003.

It is true that it was in October 2003 when Ms. Tilley first missed her payment. However, the plan documentation provided to us by petitioners shows that the plan had a 90-day grace, or cure, period. The plan documents explain that "The Plan Administrator shall treat a loan in default if any scheduled repayment remains unpaid more than 90 days". Therefore, Ms.

Tilley's default under the plan did not occur until the expiration of the cure period in 2004.

Under the current regulations, when a participant fails to make payments in accordance with the terms of a loan, the loan is treated as no longer meeting the requirements of section 72(p)(2)(C) and a deemed distribution results. Sec. 1.72(p)-1, Q&A-4, Income Tax Regs. The deemed distribution occurs at the time the installment payment was due but not made. Sec. 1.72(p)-1, Q&A-10, Income Tax Regs. The current regulations also provide that the deemed distribution will not occur if the installment payment due is made before the end of any cure period permitted by the plan administrator. Sec. 1.72(p)-1, Q&A-10, Income Tax Regs. In other words, under the current regulations, the deemed distribution would clearly not occur until the close of any cure period provided under the plan. However, Ms. Tilley's loan was made in 1999, before the effective date of the current regulations. See sec. 1.72(p)-1, Q&A-22, Income Tax Regs. Accordingly, the final regulation is not applicable to the case at bar.

Before the promulgation of the final regulation, a proposed regulation had been issued containing the same provisions. See sec. 1.72(p)-1, Q&A-4, Q&A-10, Proposed Income Tax Regs., 60 Fed. Reg. 66235, 66236 (Dec. 21, 1995). The proposed regulation, however, was to apply only to loans made after a certain period

after the final regulation had been published. Sec. 1.72(p)-1, Q&A-19, Proposed Income Tax Regs., 60 Fed. Reg. 66237 (Dec. 21, 1995). Further, a proposed regulation is given no more weight than a position advanced by the Commissioner on brief. KTA-Tator, Inc. v. Commissioner, 108 T.C. 100, 102-103 (1997); F.W. Woolworth Co. v. Commissioner, 54 T.C. 1233, 1265-1266 (1970).

Given that the regulations do not shed light on this dispute, the only logical way to reach a conclusion is to examine the facts before us and, in particular, the plan documents. The materials provided to us at trial suggest that the plan's administrator defines date of default as being 90 days following an outstanding payment's due date. Although petitioners point to the plan's loan acceleration clause and urge us to adopt their argument that the default occurred immediately upon Ms. Tilley's termination of employment, a far more reasonable interpretation is that the acceleration clause merely controls the amount due at termination (i.e., the entire balance of the loan becomes due and payable) and does not negate the 90-day cure period. Further, petitioners' own actions belie their argument that they believed the deemed distribution occurred in 2003, as they did not report the deemed distribution on their 2003 Federal income tax return.

The record demonstrates that the balance due at the time of the default--the date at which cure was no longer possible--was

$31,176.99. Thus, pursuant to section 72(p)(1)(A), a $31,176.99 distribution is deemed to have been made in 2004.

Section 402(a) provides generally that distributions from a qualified plan are taxable to the distributee in the taxable year in which the distribution occurs, pursuant to the provisions of section 72, and thus the $31,176.99 deemed distribution was taxable in 2004.

B.  10-Percent Additional Tax

Section 72(t) imposes an additional tax on a distribution from a qualified retirement plan made prior to a taxpayer's attaining the age of 59½ unless an enumerated exception applies. For example, the additional tax does not apply to distributions that are made to a beneficiary on or after the death of the employee or that are attributable to the employee's being disabled. See sec. 72(t)(2). The additional tax equals 10 percent of the portion of such distribution that is includable in gross income. The additional tax is intended to discourage premature distributions from retirement plans. Dwyer v. Commissioner, 106 T.C. 337, 340 (1996); see also S. Rept. 93-383, at 134 (1973), 1974-3 C.B. (Supp.) 80, 213.

Petitioners had a deemed distribution of $31,176.99 from the balance of Ms. Tilley's loan and an actual distribution of $76,849.93 (from which taxes were withheld) from the closure of her 401(k) plan account. Ms. Tilley had not yet attained the age

of 59½ at the time of the distributions, nor did any of the other statutory exceptions to the additional tax apply.  See sec. 72(t)(2).

Petitioners do not, in fact, argue that any statutory exception applies.  Their only argument as to why they should not be subject to the additional tax is that "they didn't cause the withdrawal" and that Fidelity made a mistake in failing to roll over the money into Ms. Tilley's IRA.  But petitioners did receive a distribution, and they did use the money distributed. Further, alleged mistakes of the sort claimed here are not among the enumerated exceptions to the additional tax.  Petitioners are therefore liable for it.[4]  See Arnold v. Commissioner, 111 T.C. 250, 255 (1998); Schoof v. Commissioner, 110 T.C. 1, 11 (1998); Clark v. Commissioner, 101 T.C. 215, 224-225 (1993); Swihart v. Commissioner, T.C. Memo. 1998-407.

C.  Negligence Penalty

Section 6662(a) imposes a penalty equal to 20 percent of any underpayment that is attributable to either negligence or disregard of rules or regulations.  See sec. 6662(a) and (b)(1). The term "negligence" includes any failure to make a reasonable attempt to comply with the provisions of the internal revenue

---

[4]  Regardless of whether the sec. 72(t) additional tax is a penalty or an additional amount under sec. 7491(c), respondent has satisfied his burden of production with respect to the distribution.  See Milner v. Commissioner, T.C. Memo. 2004-111 n.2.

laws. Sec. 6662(c); sec. 1.6662-3(b)(1), Income Tax Regs. The term "disregard" includes any careless, reckless, or intentional disregard. Sec. 6662(c); sec. 1.6662-3(b)(2), Income Tax Regs. Respondent determined that petitioners are liable for this penalty.

By virtue of section 7491(c), the Commissioner has the burden of production with respect to a taxpayer's liability for any penalty. To meet this burden, the Commissioner must produce sufficient evidence indicating that it is appropriate to impose the relevant penalty. Higbee v. Commissioner, 116 T.C. 438, 446 (2001). Once the Commissioner meets the burden of production, the taxpayer must come forward with persuasive evidence that the Commissioner's determination is incorrect. Id.

Respondent satisfied his burden of production under section 7491(a)(1) because the record clearly demonstrates that petitioners failed to include Ms. Tilley's 401(k) plan distributions in their gross income despite being required to do so. Accordingly, we hold that respondent satisfied his burden.

Section 6664 provides an exception to the imposition of an accuracy-related penalty if the taxpayer establishes that there was reasonable cause for the understatement and that the taxpayer acted in good faith with respect to that portion. Sec. 6664(c)(1); sec. 1.6664-4(b), Income Tax Regs. The taxpayer bears the burden of proving that he or she acted with reasonable

cause and in good faith.  See sec. 6664(c)(1); see also <u>Higbee v.</u> <u>Commissioner</u>, <u>supra</u> at 446; sec. 1.6664-4(b)(1), Income Tax Regs. The determination of whether a taxpayer acted with reasonable cause and good faith is made on a case-by-case basis.  Sec. 1.6664-4(b)(1), Income Tax Regs.  Generally, the most important factor is the extent of the taxpayer's effort to assess the proper tax liability for such year.  <u>Id.</u>

Petitioners claim that they relied on the Fidelity representative's assertion that the distribution was not taxable and thus should not be held responsible for the penalty.  Good faith reliance on professional advice concerning tax laws may be a defense to the negligence penalty.  <u>Neonatology Assocs., P.A.</u> <u>v. Commissioner</u>, 115 T.C. 43, 99 (2000), affd. 299 F.3d 221 (3d Cir. 2002); see also <u>United States v. Boyle</u>, 469 U.S. 241, 250- 251 (1985); sec. 1.6664-4(b)(1), Income Tax Regs.  However, "Reliance on professional advice, standing alone, is not an absolute defense to negligence, but rather a factor to be considered."  <u>Freytag v. Commissioner</u>, 89 T.C. 849, 888 (1987), affd. 904 F.2d 1011 (5th Cir. 1990), affd. 501 U.S. 868 (1991); see also sec. 1.6664-4(b)(1), Income Tax Regs.  In order to be considered as such, the reliance must be reasonable.  See <u>Freytag</u> <u>v. Commissioner</u>, <u>supra</u> at 888; sec. 1.6664-4(b)(1), Income Tax Regs.

Petitioners did not have reasonable cause to believe that the $108,026.92 distribution they received from Ms. Tilley's plan account was not taxable.  In fact, they received three Forms 1099-R that year, and we are not persuaded by petitioners' allegation that they believed this distribution alone was not taxable.  Further, it was not reasonable for petitioners to rely on a Fidelity call-center representative for tax advice. Accordingly, we sustain respondent's determination on this issue.

D.  Conclusion

We have considered all of petitioners' arguments and, to the extent we did not specifically address them, we conclude they are without merit.

Any remaining adjustments listed in the notice of deficiency are mechanical in nature, and their resolution flows from this decision. To reflect our disposition of the disputed issues,

Decision will be entered

for respondent.